## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF KANSAS
## AT KANSAS CITY

| | | |
|---|---|---|
| **TUCKER KAUFMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.  2:21-cv-2007** |
| | ) | |
| **CENTRAL RV, INC.** | ) | |
| **SERVE:** | ) | |
| **Nicholas R. Ford, Registered Agent** | ) | **JURY TRIAL DEMANDED** |
| **2324 East Logan Street** | ) | |
| **Ottawa, Kansas 66067** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

COMES NOW, Plaintiff Tucker Kaufman, by and through his undersigned counsel, and states and alleges as follows:

## NATURE OF THE CASE

1. Central RV, Inc. has a lengthy and colored history of washing salvaged titles of travel trailers and re-selling them to unsuspecting consumers without ever disclosing the prior damage history of the travel trailers.

2. Central RV, Inc.'s practice of manipulating Kansas law to perpetuate this fraud on consumers led the Kansas legislature to amend existing laws in 2016 to specifically address this issue.

3. In 2019, Central RV, Inc. was even required to pay the Kansas Attorney General $30,000.00 in fines plus $10,000 to cover legal and investigation expenses.

1

4.      Yet Central RV continues to sell travel trailers with "clear" titles without disclosing the prior damage to the unsuspecting consumer.

5.      In this case, Central RV, Inc. sold Plaintiff Tucker Kaufman a 2013 Forest River Cardinal Travel Trailer with VIN #: 4X4FCAN20DG098746 ("the Cardinal"), claiming that the Cardinal had a clear title, not revealing that the Cardinal had previously been declared a total loss by an insurance company due to storm damage.

6.      Upon information and belief, Central RV, Inc. knew the Cardinal had been declared a total loss when it sold the Cardinal to Plaintiff.

7.      Knowing that a travel trailer with a clear title and no history of damage is worth the most, Central RV, Inc. failed to disclose the prior damage to Plaintiff and failed to disclose that the Cardinal had previously been declared a total loss by an insurance company.

8.      Central RV has become a master at manipulating unsuspecting customers into purchasing salvage travel trailers and travel trailers with prior damage at high retail prices, allowing itself to inflate profit margins.

9.      This suit, therefore, sounds in fraud and deception.

## PARTIES

10.      Plaintiff Tucker Kaufman ("Plaintiff" or "Tucker") is an individual Texas resident, but he was an individual Kansas resident and Kansas consumer at the time the transaction of the Cardinal occurred.

11.      Defendant Central RV, Inc. ("Central RV") is a Kansas for-profit Corporation with its principal place of business in Ottawa, Kansas. Central RV can be

served by serving its Registered Agent, Nicholas R. Ford, at 2324 East Logan Street, Ottawa, Kansas 66067.

12.     Central RV is a dealership which specializes in selling Recreational Vehicles, including travel trailers.

## JURISDICTION AND VENUE

13.     This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Tucker and Central RV have complete diversity, and the amount in controversy is in excess of $75,000.00.

14.     Venue in this court is proper pursuant to 28 U.S.C. § 1391.

## FACTS COMMON TO ALL COUNTS

### Central RV's Acquisition of the Cardinal

15.     On or about August 22, 2018, Central RV purchased the Cardinal from an auto auction.  Upon information and belief, from Insurance Auto Auctions—an auction company which specializes in the sale of salvage vehicles.[1]

16.     At the time of the auction, the owner of the Cardinal was Arkansas Farm Bureau, which is an insurance company.

17.     After Central RV purchased the Cardinal, it was shipped to Central RV to be put up for sale at the dealership.

18.     Upon information and belief, Central RV inspected the Cardinal upon its arrival at the dealership pursuant to a checklist.

---

[1]  *See, e.g.,*  https://www.autoauctionmall.com/learning-center/how-to-buy-salvage-title-cars-from-insurance-companies/ ("IAAI – Insurance salvage car auctions").

19.     Central RV claims the only damage it found was a "window that appeared to be broken" because it "could not find an[y] significant damage to warrant any other conclusion."

20.     However, the Cardinal had been declared a total loss by Arkansas Farm Bureau, and that is why it was for sale at the auction.

21.     Upon information and belief, the claim for the Cardinal was made due to hail damage to the roof, but Arkansas Farm Bureau ultimately declared the Cardinal a total loss due to water damage to the interior.

22.     Upon information and belief, the water damage to the interior was caused by a leak in the roof and/or possible the slides.

23.     Arkansas Farm Bureau estimated repairs to the Cardinal would cost approximately $54,580.00.

24.     Upon information and belief, the estimated cost of repair was significant because fixing the problem would require removing the Cardinal's slides and roof.

25.     Upon information and belief, Central RV was aware that the Cardinal was being sold by Arkansas Farm Bureau due to storm damage and that the estimated cost of repairs was $54,580.00.

26.     Upon information and belief, Central RV did not make any repairs to the Cardinal or fix its leaking roof.

### Tucker's Purchase of the Cardinal

27.     In the fall of 2018, Tucker became interested in purchasing a travel trailer.

28.     At this time, Tucker had never purchased a travel trailer and did not have

any experience related to purchasing travel trailers.

29.     Tucker made plans to go to Kansas City to look at travel trailers because there are more travel trailer dealerships in the Kansas City area than his hometown.

30.     Prior to traveling to Kansas City, Tucker looked at some travel trailers online.

31.     While looking online, Tucker found the Cardinal for sale at Central RV.

32.     Tucker was interested in purchasing the Cardinal and liked that Central RV had good reviews/ratings online.

33.     After seeing the good reviews/ratings of Central RV online, Tucker believed Central RV was a reputable dealer that he could trust.

34.     On or about November 20, 2018, Tucker visited Central RV to look at the Cardinal.

35.     Tucker primarily worked with a Central RV sales representative named James Searle during this visit.

36.     During his visit to Central RV, Tucker informed Mr. Searle that he did not have any experience related to travel trailers.

37.     Neither Mr. Searle nor any other employee or agent of Central RV disclosed any information about previous damage to the Cardinal to Tucker.

38.     On or about November 20, 2018, Tucker paid Central RV a $1,000 deposit.

39.     The $1,000 deposit went towards the purchase of the Cardinal, with Tucker to pay the balance of the purchase price, $32,330.00, by November 23, 2018.

40.     On or about November 28, 2018, Tucker purchased the Cardinal.

41.     Tucker purchased the Cardinal for a total of $35,996.40, which included the $33,330.00 purchase price and $2,666.40 in sales tax.

42.     Upon information and belief, the $1,000.00 deposit that Tucker had paid was not refunded to his credit card.

43.     After purchasing the Cardinal, a Central RV mechanic/service representative showed Tucker how the Cardinal operated.

44.     During this walk-through, the service representative attempted to show Tucker how the automatic jacks worked, but the jacks were going slow and not working properly.

45.     The service representative informed Tucker that the jacks were not working properly/were moving slow because of the cold.

46.     Because Tucker did not have experience in travel trailers and the service representative was an agent of Central RV—a dealer in travel trailers—Tucker believed the service representative.

47.     However, to this day, Tucker still experiences issues with the jacks not working properly.

**Tucker's Discovery of the Cardinal's Prior Damage**

48.     During the summer of 2019, Tucker was thinking of selling the Cardinal, and he planned to contact Central RV to see if they would be interested in purchasing back the Cardinal from him.

49.     When Tucker looked Central RV up to contact them, he discovered that the company had previously been involved in a lawsuit that alleged they had failed to

disclose prior information and/or were performing "title washing."

50.     After discovering this information, Tucker decided to investigate whether the Cardinal had any prior damage that Central RV had failed to disclose to him prior to his purchase.

51.     In his research, Tucker discovered a website called instavin.com which had information about the history of the Cardinal.

52.     After searching the Cardinal on instavin.com, Tucker discovered that the Cardinal had in fact sustained prior damage and was declared a total loss by an insurance company.

53.     Central RV had not disclosed the prior damage to the Cardinal nor that the Cardinal was declared a total loss to Tucker prior to his purchase of the Cardinal.

54.     After learning that Central RV had failed to inform him of these facts, Tucker contacted the Kansas Attorney General's office to file a complaint.

55.     Tucker's point of contact regarding his complaint in the Kansas Attorney General's office was Ed Burr.

56.     In response to an inquiry from the Kansas Attorney General, Central RV represented that the only "storm damage" it found upon inspecting the Cardinal after receiving it from the auction was "a window that appeared to be broken."

57.     On or about August 27, 2020, Tucker received an email from Mr. Burr informing him that the Attorney General would not be taking any further action in regard to his complaint.

58.     During September and October 2020, Tucker made several attempts to

contact Central RV and Nick Ford for information relating to the Cardinal and his purchase of the Cardinal.

59.     Central RV informed Tucker that Tucker would have to address all communications to either Nick Ford or its attorney(s) as there is an ongoing dispute in the Attorney General's office.

60.     Tucker sent several emails to Nick Ford inquiring about the history of the Cardinal and what Central RV knew about the history of the Cardinal.

61.     Nick Ford was reluctant to engage with Tucker and refused to provide any answers, claiming that all the answers could be found in the documents Central RV had sent to the Kansas Attorney General.

62.     Notably, Nick Ford refused to answer simple questions—like what repairs were made to the Cardinal by Central RV.

63.     Nick Ford has yet to answer any of Tucker's questions regarding the Cardinal.

**Tolling of the Statute of Limitations**

64.     While Plaintiff purchased the Cardinal in November 2018, the statute of limitations has not expired for any of his claims.

65.     Specifically, in March 2020, the Kansas Supreme Court—exercising authority bestowed upon it by the Kansas legislature—tolled the running of all statutes of limitations and repose.

66.     That tolling has been repeatedly extended, without disruption, and continues through the date of this filing.  In fact, the latest extension to that tolling

provides that the tolling is to continue until, at least, January 10, 2021. Kan. Admin. Order 2020-PR-130.

67.     As of the date of this Complaint, 2020-PR-130 has not been revoked or modified.

68.     Accordingly, the suspension of the statutes of limitations remains in effect, and Tucker's claims are timely.

<u>COUNT ONE:</u>
**VIOLATIONS OF THE KANSAS CONSUMER PROCTECTION ACT**

69.     Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

70.     The Kansas Consumer Protection Act ("KCPA"), K.S.A. § 50-623 *et seq.*, prohibits deceptive and unconscionable acts and practices in connection with consumer transactions in Kansas.

71.     The KCPA should be liberally construed to promote its policies of protecting consumers against suppliers that commit deceptive and unconscionable acts and/or practices. K.S.A. § 50-623.

72.     Tucker is a "consumer" as defined by K.S.A. § 50-624(b).

73.     Specifically, Tucker purchased the Cardinal in Kansas primarily for personal, family, household, business, and/or agricultural purposes in that the Cardinal was to be used as Tucker's living quarters while traveling for work.

74.     Central RV is a "supplier" as defined by K.S.A. § 50-624(1).

75.     Specifically, Central RV is a Recreational Vehicle dealer which, in the

ordinary course of business, solicits consumer transactions, frequently dealing directly with the consumer.

76.     The purchase of the Cardinal was a "consumer transaction" as defined by K.S.A. § 50-624(c).

77.     Specifically, the purchase of the Cardinal was the sale of property which occurred within the state of Kansas to a consumer—Tucker.

78.     Tucker has been damaged and is "aggrieved" pursuant to the KCPA as a result of Central RV's conduct.

79.     Central RV's violations of K.S.A. § 50-626, Deceptive Acts and Practices, includes, but are not limited to, the following:

    a.  Central RV falsely represented, knowingly or with reason to know, that the Cardinal had sponsorship, approval, accessories, characteristics, ingredients, uses, benefits, and/or quantities that it did not have, in violation of K.S.A. § 50-626(b)(1)(A);

    b.  Central RV falsely represented, knowingly or with reason to know, that the Cardinal was of a particular standard, quality, grade, style, and/or model when it materially differed from that representation, in violation of K.S.A. § 50-626(b)(1)(D);

    c.  Central RV falsely represented, knowingly or with reason to know, that the Cardinal had uses, benefits, and/or characteristics, when Central RV had no reasonable basis for making such representation(s), in violation of K.S.A. § 50-626(b)(1)(F);

    d.  Central RV willfully used, in any oral and/or written representation, an exaggeration, falsehood, innuendo, and/or ambiguity as to the material fact that the Cardinal had previously sustained serious damage, in violation of K.S.A § 50-626(b)(2);

    e.  Central RV willfully concealed, suppressed, and/or omitted the material fact that the Cardinal had previously sustained serious damage, in violation of K.S.A. § 50-626(b)(3);

    f.  Central RV willfully concealed, suppressed, and/or omitted the material fact that an auction had announced the Cardinal as having prior serious damage and being declared a total loss, in violation of K.S.A. § 50-626(b)(3); and

      g. Central RV engaged in a pattern of conduct which, when taken in its totality, is and was deceptive, in violation of K.S.A. § 50-626(a).

80.    Central RV's violations of K.S.A. § 50-627, Unconscionable Acts and Practices, include, but are not limited to, the following:

      a. Central RV took advantage of Tucker's inability to reasonably protect his interests because of his ignorance of the law, in violation of K.S.A. 50-627(b)(1);

      b. Central RV took advantage of Tucker's inability to reasonably protect his interest because of his ignorance of the material fact that the Cardinal had prior serious damage, in violation of K.S.A. 50-627(b)(1);

      c. Central RV induced Tucker into a consumer transaction in which the price grossly exceeded the price at which similar property was readily obtainable in similar transactions by similar consumers, in violation of K.S.A. 50-627(b)(2);

      d. Central RV induced Tucker into a consumer transaction which was excessively one-sided in favor of Central RV, in violation of K.S.A. 50-627(b)(5);

      e. Central RV made a misleading statement of opinion on which Tucker relied to Tucker's detriment, in violation of K.S.A. 50-627(b)(6); and

      f. Central RV engaged in a pattern of conduct which, when taken in its totality, is and was unconscionable, in violation of K.S.A. 50-627(a).

81.    Defendant's conduct directly and proximately caused Plaintiff's damages.

82.    Tucker is entitled to recover the greater of his actual damages or a civil penalty in the amount of $10,000.00 per violation as provided by K.S.A. § 50-634 and § 50-636.

83.    In this case, Tucker's actual damages include the falsely inflated sale price, $813.98 for a hitch pyramid to haul the Cardinal,[2] and emotional distress.

84.    Tucker is further entitled to recover his costs and reasonable attorneys'

---

[2] Tucker only bought the hitch pyramid because he bought the Cardinal. Had he not purchased the Cardinal, he would not have purchased the hitch pyramid. And had he known about the material information Defendant concealed, Tucker would not have purchased the Cardinal.

fees.

85.     Further, Tucker is a protected consumer in that Tucker is a veteran, as that term is defined by K.S.A. § 50-676(i). Accordingly, Tucker is entitled to an "additional civil penalty" of $10,000.00 per KCPA violation found, which shall be determined and applied separately from any penalty(ies) awarded pursuant to K.S.A. § 50-634 and § 50-636.

86.     Further, as a protected consumer, Tucker is also entitled to recover punitive damages, as Defendant's conduct was intentional, willful, wanton, fraudulent, reckless, and/or malicious.

WHEREFORE, Plaintiff prays for judgment against Central RV in such amount as is allowable by law and to be determined at trial, for his actual damages, civil penalties, punitive damages, pre- and post-judgment interest at the greatest rate allowed by statute, for his costs and reasonable attorneys' fees, and for such other and further relief as may be just and proper under the circumstances.

## COUNT TWO:
### FRAUD

87.     Tucker incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

88.     Defendant knew, before the sale of the Cardinal to Tucker, that the Cardinal had prior damage and was declared a total loss.

89.     At the time of the sale, Tucker did not know that the Cardinal had sustained prior damage nor that it had been declared a total loss.

90.     Because Defendant had not told Tucker that the Cardinal had sustained prior damage or had been declared a total loss, Defendant knew that Tucker did not know these things.

91.     Defendant also affirmatively represented that the Cardinal was not salvage by representing that it had a clear title. Even if this representation may have been technically true, it was misleading for it led Tucker to not inquire about whether the Cardinal had previously been declared a total loss.

92.     A reasonable person would find the fact that the Cardinal had sustained prior damage and been declared a total loss important in deciding whether to purchase the Cardinal and/or in negotiating the sale price.

93.     The fact that Defendant did not disclose the fact that the Cardinal had sustained prior damage and been declared a total loss to Tucker shows that they knew a reasonable person would find this fact important. If Defendant thought the fact was not important, it would have volunteered the information.

94.     Therefore, Defendant had a duty to disclose the fact that the Cardinal had sustained prior damage and been declared a total loss to Tucker before the time of the sale.

95.     Defendant intentionally chose not to disclose to Tucker that the Cardinal had sustained prior damage and been declared a total loss before the time of the sale.

96.     Because Tucker knew of no way to discover these facts about the Cardinal before the time of the sale, his reliance on Defendant to communicate such facts is and was reasonable. It also makes reasonable Tucker's reliance upon the clear title

representation.

97.     As a direct and proximate result of Defendant's failure to disclose that the Cardinal had sustained prior damage and been declared a total loss before the time of the sale and/or as a direct and proximate result of Defendant's false and/or misleading representation that the Cardinal had a clear title, Tucker has sustained damages.

98.     Tucker's damages include the falsely inflated sale price, $813.98 for a hitch pyramid to haul the Cardinal, and emotional distress.

99.     Central RV's conduct, as described herein, was intentional, willful, wanton, reckless, fraudulent, and/or with malice, entitling Tucker to the recovery of punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendant in such amount as is allowable by law and to be determined at trial, for rescission and/or his actual damages, punitive damages, pre- and post-judgment interest at the greatest rate allowed by statute, and for such other and further relief as may be just and proper under the circumstances.

## COUNT THREE:
## FRAUD BY SILENCE

100.     Tucker incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

101.     Central RV knew, before the sale of the Cardinal to Tucker, that the Cardinal had prior damage and was declared a total loss.

102.     At the time of the sale, Tucker did not know that the Cardinal had

sustained prior damage nor that it had been declared a total loss.

103.     Because Central RV had not told Tucker that the Cardinal had sustained prior damage or had been declared a total loss, Central RV knew that Tucker did not know these things.

104.     Central RV also affirmatively represented that the Cardinal was not salvage by representing that it had a clear title. Even if this representation may have been technically true, it was misleading for it led Tucker to not inquire about whether the Cardinal had previously been declared a total loss.

105.     A reasonable person would find the fact that the Cardinal had sustained prior damage and been declared a total loss important in deciding whether to purchase the Cardinal and/or in negotiating the sale price.

106.     The fact that Central RV did not disclose the fact that the Cardinal had sustained prior damage and been declared a total loss to Tucker shows that they knew a reasonable person would find this fact important. If Central RV thought the fact was not important, it would have volunteered the information.

107.     Therefore, Central RV had a duty to disclose the fact that the Cardinal had sustained prior damage and been declared a total loss to Tucker before the time of the sale.

108.     Central RV intentionally chose not to disclose to Tucker that the Cardinal had sustained prior damage and been declared a total loss before the time of the sale to induce him into purchasing the Cardinal at full price.

109.     Because Tucker knew of no way to discover these facts about the Cardinal

before the time of the sale, his reliance on Central RV to communicate such facts is and was reasonable. It also makes reasonable Tucker's reliance upon the clear title representation.

110.     As a direct and proximate result of Central RV's failure to disclose that the Cardinal had sustained prior damage and been declared a total loss before the time of the sale and/or as a direct and proximate result of Central RV's false and/or misleading representation that the Cardinal had a clear title, Tucker has sustained damages.

111.     Tucker's damages include the falsely inflated sale price, $813.98 for a hitch pyramid to haul the Cardinal, and emotional distress.

112.     Central RV's conduct, as described herein, was intentional, willful, wanton, reckless, fraudulent, and/or with malice, entitling Tucker to the recovery of punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendant in such amount as is allowable by law and to be determined at trial, for rescission and/or his actual damages, punitive damages, pre- and post-judgment interest at the greatest rate allowed by statute, and for such other and further relief as may be just and proper under the circumstances.

## COUNT FOUR:
## FRAUDULENT MISREPRESENTATION

113.     Tucker incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

114.     Central RV knew, before the sale of the Cardinal to Tucker, that the

Cardinal had prior damage and was declared a total loss.

115.    At the time of the sale, Tucker did not know that the Cardinal had sustained prior damage nor that it had been declared a total loss.

116.    Because Central RV had not told Tucker that the Cardinal had sustained prior damage or had been declared a total loss, Central RV knew that Tucker did not know these things.

117.    Central RV also affirmatively represented that the Cardinal was not salvage by representing that it had a clear title. Even if this representation may have been technically true, it was misleading for it led Tucker to not inquire about whether the Cardinal had previously been declared a total loss.

118.    A reasonable person would find the fact that the Cardinal had sustained prior damage and been declared a total loss important in deciding whether to purchase the Cardinal and/or in negotiating the sale price.

119.    The fact that Central RV did not disclose the fact that the Cardinal had sustained prior damage and been declared a total loss to Tucker shows that they knew a reasonable person would find this fact important. If Central RV thought the fact was not important, it would have volunteered the information.

120.    Therefore, Central RV had a duty to disclose the fact that the Cardinal had sustained prior damage and been declared a total loss to Tucker before the time of the sale.

121.    Central RV intentionally chose not to disclose to Tucker that the Cardinal had sustained prior damage and been declared a total loss before the time of the sale to

induce him into purchasing the Cardinal at full price.

122.     Because Tucker knew of no way to discover these facts about the Cardinal before the time of the sale, his reliance on Central RV to communicate such facts is and was reasonable. It also makes reasonable Tucker's reliance upon the clear title representation.

123.     As a direct and proximate result of Central RV's failure to disclose that the Cardinal had sustained prior damage and been declared a total loss before the time of the sale and/or as a direct and proximate result of Central RV's false and/or misleading representation that the Cardinal had a clear title, Tucker has sustained damages.

124.     Tucker's damages include the falsely inflated sale price, $813.98 for a hitch pyramid to haul the Cardinal, and emotional distress.

125.     Central RV's conduct, as described herein, was intentional, willful, wanton, reckless, fraudulent, and/or with malice, entitling Tucker to the recovery of punitive damages.

WHEREFORE, Plaintiff prays for judgment against Defendant in such amount as is allowable by law and to be determined at trial, for rescission and/or his actual damages, punitive damages, pre- and post-judgment interest at the greatest rate allowed by statute, and for such other and further relief as may be just and proper under the circumstances.

## COUNT FIVE:
## NEGLIGENCE

126.     Tucker incorporates by reference all facts and allegations contained in the

foregoing paragraphs as though fully laid out herein.

127.     Central RV knew, at the time of the sale, that the Cardinal had sustained prior damage and been declared a total loss.

128.     Central RV knew, or should have known, that Tucker did not, at the time of the sale, know that the Cardinal had sustained prior damage and been declared a total loss.

129.     Central RV therefore knew, or should have known, that Tucker believed the Cardinal had not sustained prior damage and/or been declared a total loss.

130.     Central RV knew, or should have known, that Tucker would not have paid $33,330.00 for a travel trailer that had sustained prior damage and been declared a total loss.

131.     Therefore, Central RV knew, or should have known, that Tucker was entering into the sale based upon a mistake of material fact.

132.     Central RV therefore had a duty to disclose that the Cardinal had sustained prior damage and been declared a total loss.

133.     Central RV breached this duty by failing to disclose that the Cardinal had sustained prior damage and been declared a total loss.

134.     But for Central RV's negligence in failing to disclose the prior damage to the Cardinal and the material fact that it had been declared a total loss, Tucker would not have purchased the Cardinal.

135.     As a direct and proximate result of Central RV's breach, Tucker has been damaged.

136.     Tucker's damages include the falsely inflated sale price, $813.98 for a hitch pyramid to haul the Cardinal, and emotional distress

137.     Central RV's conduct as described herein was grossly negligent, intentional, willful, wanton, reckless, fraudulent, and malicious, entitling Tucker to the recovery of punitive damages.

WHEREFORE, Plaintiff prays for judgment against Central RV in such amount as is allowable by law and to be determined at trial, for his actual damages, punitive damages, pre- and post-judgment interest at the greatest rate allowed by statute, and for such other and further relief as may be just and proper under the circumstances.

**COUNT SIX:**
**NEGLIGENT MISREPRESENTATION**

138.     Tucker incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

139.     Central RV knew, at the time of the sale, that the Cardinal had sustained prior damage and been declared a total loss.

140.     Central RV knew, or should have known, that Tucker did not, at the time of the sale, know that the Cardinal had sustained prior damage and been declared a total loss.

141.     Central RV therefore knew, or should have known, that Tucker believed the Cardinal had not sustained prior damage and/or been declared a total loss.

142.     Central RV knew, or should have known, that Tucker would not have paid $33,330.00 for a travel trailer that had sustained prior damage and been declared a

total loss.

143.     Therefore, Central RV knew, or should have known, that Tucker was entering into the sale based upon a mistake of material fact.

144.     Central RV therefore had a duty to disclose that the Cardinal had sustained prior damage and been declared a total loss.

145.     Central RV breached this duty by failing to disclose that the Cardinal had sustained prior damage and been declared a total loss and representing that the Cardinal was in good condition.

146.     Central RV knew the representation that the Cardinal was in good condition was false or failed to exercise reasonable care in determining its truth.

147.     Central RV specifically represented to Tucker that the Cardinal was in good condition in order to induce him into purchasing the Cardinal.

148.     Tucker reasonably relied on Central RV's representation as a reasonable consumer would in light of all the circumstances.

149.     As a direct and proximate result of Central RV's breach, Tucker has been damaged.

150.     Tucker's damages include the falsely inflated sale price, $813.98 for a hitch pyramid to haul the Cardinal, and emotional distress.

151.     Central RV's conduct as described herein was grossly negligent, intentional, willful, wanton, reckless, fraudulent, and malicious, entitling Tucker to the recovery of punitive damages.

WHEREFORE, Plaintiff prays for judgment against Central RV in such amount

as is allowable by law and to be determined at trial, for his actual damages, punitive damages, pre- and post-judgment interest at the greatest rate allowed by statute, and for such other and further relief as may be just and proper under the circumstances.

**COUNT SEVEN:**
**CONVERSION**

152.     Tucker incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

153.     At all times relevant, Plaintiff was the rightful owner of the $1,000 down payments he made on the Cardinal.

154.     Central RV took possession of Tucker's $1,000 down payment on or about November 20, 2018.

155.     Central RV took possession of that $1,000 down payment with the intent to exercise control over and to the exclusion of Tucker's rights of ownership and possession of the same.

156.     Central RV did in fact exercise such control over the $1,000, thereby depriving Tucker of his right of ownership and possession of the same.

157.     To date, Central RV has not returned Tucker's $1,000 down payment.

158.     As a direct and proximate result of Central RV's refusal to return the $1,000, Tucker has suffered damages.

WHEREFORE, Plaintiff prays for judgment against Defendant in such amount as is allowable by law and to be determined at trial, for his actual damages, punitive damages, pre- and post-judgment interest at the greatest rate allowed by statute, and for such other and further relief as may be just and proper under the circumstances.

## COUNT EIGHT:
## PINJUNCTIVE RELIEF

159.    Plaintiff incorporates by reference all facts and allegations contained in the foregoing paragraphs as though fully laid out herein.

160.    Central RV has a longstanding practice of failing to disclose vehicle history, including prior damage and branding, as required by Kansas law to consumers.

161.    Central RV's failure to disclose vehicle history has violated and continues to violate Kansas law.

162.    Central RV's unlawful practices continue to this day and have damaged Tucker.

163.    This harm far outweighs any conceivable damage to Central RV that could arise from such injunction.

164.    If not enjoined, Central RV will continue to injure the general public through its unlawful practices as alleged herein, which are directed at the consuming public, including Kansas.

165.    An injunction, if issued, would be well within the public interest in protecting consumers.

166.    Accordingly, Plaintiff is entitled to an injunction reasonably calculated to end Central RV's unlawful practices as outlined herein.

WHEREFORE, Plaintiff respectfully requests this Court to enter a preliminary and/or permanent injunction, directing Central RV to disclose all vehicle history, including prior damage and branding, to consumers when selling vehicles now and in

the future.

## DEMAND FOR JURY TRIAL

167.     Plaintiff hereby demands a jury trial on all issues so triable.

## DESIGNATION OF PLACE OF JURY TRIAL

168.     Plaintiff designates Kansas City, Kansas as the place for this case to be

tried to a jury.

Respectfully submitted,

*/s/ Mark W. Schmitz*
Bryce B. Bell          KS#20866
Mark W. Schmitz     KS#27538
Bell Law, LLC
2600 Grand Blvd., Suite 580
Kansas City, Missouri 64108
T: 816-886-8206
F: 816-817-8500
Bryce@BellLawKC.com
MS@BellLawKC.com

***Attorneys for Plaintiff***