IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TUCKER KAUFMAN,

            Plaintiff,

vs.                                      Case No. 21-2007-SAC

CENTRAL RV, INC.,

            Defendant.

**O R D E R**

This case arises from the sale of a used travel trailer by defendant to plaintiff in November 2018. This case is before the court upon defendant's motion for summary judgment. Doc. No. 90. Plaintiff alleges fraud, misrepresentation, and consumer protection claims against defendant.[1]

I. Summary judgment standards

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a). Such a showing may be made with citation "to particular parts of materials in the record, including depositions, documents, . . . affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." FED.R.CIV.P. 56(c)(1)(A). The court views the evidence and all reasonable

---

[1] Plaintiff also has a conversion claim which is not a target of the summary judgment motion before the court.

1

inferences therefrom in the light most favorable to the nonmoving party. Spaulding v. United Transp. Union, 279 F.3d 901, 904 (10th Cir. 2002). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998). The court cannot decide material factual disputes on summary judgment on the basis of conflicting sworn statements. Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991). The court also cannot weigh the credibility of witnesses. Fogarty v. Gallegos, 523 F.3d 1147, 1165 (2008). The moving party may demonstrate an absence of a genuine issue of material fact by pointing out a lack of evidence for the other party on an essential element of that party's claim. Adams v. Am. Guar. & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000)(quoting Adler, 144 F.3d at 671).

II. Uncontroverted facts

The following facts are uncontroverted for the purposes of defendant's motion or are controverted and viewed in a light most favorable to plaintiff.

Plaintiff purchased a 2013 Forest River Cardinal Travel Trailer ("the Cardinal") from defendant, an RV dealer, in November 2018. Defendant purchased the Cardinal in August 2018 for $15,344.00 from the Arkansas Farm Bureau through an online auction operated by Insurance Auto Auctions ("IAA"). Prior to the Cardinal

being auctioned, a staff appraiser for the Arkansas Farm Bureau found water damage to the interior of both walls, an interior water stain, and observed that the interior walls were rippling. The cost of repairing the Cardinal was estimated at $54,580.44. Based on this estimate and other information, the appraiser determined that the Cardinal was a total loss.

IAA refers to itself as a salvage dealer or salvage auction. Vehicles sold by or for insurance companies account for about 80% of IAA's inventory. According to IAA's general manager, such units are typically "total loss" vehicles.[2]

Prior to the sale, IAA posted an advertisement for the Cardinal which stated "Title/Sale Doc.: CLEAR (Arkansas)," "Loss: Other," and "Primary Damage: Storm Damage." The advertisement did not expressly state that the Cardinal was a total loss. "Storm damage" could mean an amount of damage less than a "total loss."

At the time of purchase, defendant received a State of Arkansas title for the Cardinal. The title indicated that the Cardinal was owned by an insurance company and bore the title brand "clear." The title did not bear a "salvage" or "total loss" brand or designation.

---

[2] Defendant's representatives have testified that one can tell nothing about a vehicle's total loss history from the fact that an insurance company is selling it with IAA. Plaintiff, on the other hand, claims that it is common knowledge in the industry that vehicles sold at auction by an insurance company are total loss vehicles. Both sides have referred to a letter from the Consumer Protection Division of the Kansas Attorney General's Office which indicates that purchasing a vehicle from an insurance company at auction is a red flag that the vehicle is a salvage unit. Doc. No. 92-14.

Defendant's employees made an inspection and performed some repairs to the Cardinal totaling around $4,500. Some repairs were directed toward water damage. A "checklist" for the Cardinal identified some of the repair work defendant performed and what vehicle parts were inspected. Plaintiff denies that he saw the checklist before buying the Cardinal.

Defendant obtained a CarFax report for the Cardinal on March 18, 2021, more than two years after plaintiff's purchase. The report had "No Issues Reported" in the "Total Loss" category.

Prior to purchasing the Cardinal, plaintiff and his fiancée saw it on defendant's website and saw it in person at defendant's location on or about November 19, 2018. Defendant's advertisement for the Cardinal did not mention the total loss history or the fact or extent of any prior storm damage. The advertisement stated in part: "IT IS BEING GONE THROUGH 100% and checked out TOP TO BOTTOM – INSIDE AND OUT." Doc. No. 92-8, p. 2. A walk-through was performed. Plaintiff denies that he was told about prior storm damage or what repair work was performed aside from fixing a broken window. Plaintiff admits that he received the "NADAguides" report and the Cardinal's title during the sales process.

Plaintiff made a $1,000 down payment on November 20, 2018 and later agreed to purchase the Cardinal for $35,996.40. Plaintiff used the Cardinal as intended, living in it from approximately December 2018 to February 2019 and using it in the summer of 2020

4

for a family reunion. Plaintiff has left the Cardinal in storage without use for a significant period of time.

In the summer of 2019, plaintiff contemplated selling the Cardinal to defendant. As he prepared to contact defendant, he discovered that defendant had been sued for failing to disclose prior information. Plaintiff then searched the Cardinal on instavin.com and discovered that the Cardinal had sustained prior damage and was declared a total loss by an insurance company. Plaintiff has not tried to sell the Cardinal since the summer of 2019 or listed it for sale in any manner.

Plaintiff's expert witness has stated that the Cardinal had water damage which existed and was not reported before defendant sold it to plaintiff. The expert witness further stated that the fair market value of the Cardinal was $0.00. Discounting the total loss history, the witness testified that the fair market value of the Cardinal was $4,000.00.

III. Defendant's motion for summary judgment shall be denied.

A. Knowledge of "total loss" designation

Defendant contends it is critical to plaintiff's claims that plaintiff show that defendant knew the Cardinal was designated a total loss before the sale to plaintiff. Defendant further argues that the "undisputed evidence establishes that [defendant] did not know, and could not have known, the Cardinal was a 'total loss' prior to selling it to Plaintiff." Doc. No. 91, p. 5. Defendant

5

asserts that IAA did not disclose that the Cardinal was a total loss; that the IAA website posting said the Cardinal was "clear;" and that the title from IAA did not show any salvage designation. Defendant further contends that IAA did not provide defendant with any information beyond what was posted on the IAA website; defendant did not have access to the insurance file for the Cardinal; and defendant could not have contacted the prior owner prior to the sale. Defendant also asserts that the CarFax report on the Cardinal showed "No Issues Reported" regarding whether the Cardinal had previously been listed as a total loss. In addition, defendant performed repairs on the Cardinal. Finally, defendant notes that plaintiff admitted in his deposition that he did not know what knowledge defendant had concerning the Cardinal.

In response, plaintiff contends that there is evidence which creates a material issue of fact regarding defendant's knowledge that the Cardinal was a total loss. Plaintiff lists this evidence as follows. First, there is a pattern of defendant selling travel trailers with a salvage or total loss history. Second, defendant purchased the Cardinal from IAA which specializes in selling salvage vehicles and "insurance units" which are typically "total loss" vehicles. IAA disclosed to defendant that the Cardinal was being sold on behalf of an insurance company. Third, defendant purchased the Cardinal for less than half of the NADAguide value. Fourth, defendant represented that it inspected the Cardinal top

6

to bottom and inside and out. Finally, defendant did not complain to IAA about failing to expressly disclose the Cardinal's total loss history.

In reply, defendant argues that plaintiff's evidence is merely circumstantial, although defendant admits that circumstantial evidence can be considered by a jury. In fact, circumstantial evidence is often sufficient to prove fraud. See K-B Trucking Co. v. Riss International Corp., 763 F.2d 1148, 1157 (10th Cir. 1985)(quoting Chute v. Old American Ins. Co., 629 P.2d 734, 742 (Kan.App. 1981)("'Kansas has long recognized the general rule that fraud may be shown by circumstantial as well as by direct and positive proof.'"); Koch Engineering Co. v. Faulconer, 716 P.2d 180, 185 (Kan. 1986)("Direct evidence of fraud is not always available; more frequently fraud must be established by circumstantial evidence."); see also U.S. v. Singh, 390 F.3d 168, 188 (2nd Cir. 2004)(fraudulent intent is often established by circumstantial evidence); State Farm Mut. Auto. Ins. Co. v. Weiss, 410 F.Supp.2d 1146, 1159 (M.D.Fla. 2006)(questions of actual misrepresentation, intent, knowledge and reliance are often based on circumstantial evidence). So, the court will consider plaintiff's arguments even if they rely upon circumstantial evidence.

Defendant raises other evidentiary objections as well, arguing that plaintiff is relying upon documents not produced in

7

discovery and not accompanied by a proper foundation. It is unnecessary for the court to address these objections because the objections do not apply to evidence of knowledge sufficient to create a material issue of fact. The testimony of the general manager of IAA and the evidence that defendant's employees inspected the Cardinal prior to the sale (given that plaintiff's expert has testified it was a total loss), are a reasonable basis upon which a jury could determine that defendant was aware that the Cardinal was a total loss. Contrary to defendant's broadly stated assertions, the court does not consider this evidence too immaterial or speculative to support a reasonable inference of knowledge.

    B. <u>Misrepresentation of prior storm damage</u>

Defendant asserts that, contrary to plaintiff's claim, defendant made plaintiff aware of the prior storm damage to the Cardinal. Defendant contends: that it prepared a checklist of damage and repairs to the Cardinal which was shown to plaintiff; that it performed a walk-through of the Cardinal with plaintiff showing him the repair work done; that a CarFax report shown to plaintiff stated "No Issues Reported"; and that plaintiff was provided the Cardinal's title which disclosed that an insurance company was the previous owner.

Plaintiff, however, disputes that the walk-through mentioned prior storm damage and that he was provided a copy of the

8

checklist. He also disputes that he was told about any work done to the Cardinal beside fixing a broken window. Further, plaintiff denies he was given a CarFax report during the sales process and he asserts that neither the CarFax report nor the NADAguide indicated that that there was storm damage to the Cardinal. Moreover, defendant's advertisement, according to plaintiff, suggested that the Cardinal was in good condition by indicating that it had been thoroughly inspected.

Defendant's reply brief shifts defendant's argument from insisting that defendant did not misrepresent or conceal any prior storm damage, to claiming that plaintiff cannot prove that defendant had knowledge of the prior storm damage. This represents a new argument in defendant's reply brief and therefore it should be disregarded. Black & Veatch Corp. v. Aspen Insurance (UK) Ltd., 378 F.Supp.3d 975, 989 (D.Kan. 2019); Mondaine v. American Drug Stores, Inc., 408 F.Supp.2d 1169, 1202-03 (D.Kan. 2006). Moreover, the evidence that defendant performed repairs, that the Cardinal was inspected top to bottom, and the opinion of plaintiff's expert that there was storm damage to the Cardinal at the time of the sale, supports a material issue of fact as to whether defendant knew of and concealed the fact of storm damage from plaintiff.

C. Kansas Consumer Protection Act

Plaintiff alleges that defendant violated the Kansas Consumer Protection Act, K.S.A. 50-626. Defendant argues for summary

judgment against this claim on the basis of the same arguments discussed previously in this order, namely, that there is no evidence that defendant knew that the Cardinal was previously declared a "total loss," and that defendant provided plaintiff with all the information it had regarding any previous damage, including a checklist of inspection and repairs. As explained above, the court finds that there is a material issue of fact as to these arguments.

D. Damages

Defendant asserts that plaintiff cannot prove damages because plaintiff was able to use the Cardinal for nearly two years without any repairs performed by another person. In response, plaintiff refers to his expert's opinion that the fair market value of the Cardinal is zero or, ignoring the total loss history, $4,000.00. This is sufficient to find a fact question as to damages.[3]

Defendant also contends that plaintiff's evidence of emotional distress is not connected to defendant's alleged conduct. Doc. No. 91, p. 11. Plaintiff's deposition testimony and his interrogatory answers link his emotional distress to the allegations in the complaint and the purchase of the Cardinal. This is sufficient on this record to create a material issue of fact.

---

[3] Defendant also refers to previously discussed evidence regarding the checklist which is in material dispute.

10

E. <u>Injunctive relief</u>

Finally, defendant asks that the court grant summary judgment against plaintiff's claim for injunctive relief. The KCPA grants consumers the right to bring an action to "enjoin or obtain a restraining order against" violations of its provisions. K.S.A. 50-634. The statute grants similar authority to the Kansas Attorney general and county or district attorneys. K.S.A. 50-632. The authority to bring a private action for injunctive relief has been characterized as the power to act as a private attorney general. See Clark, "The New Kansas Consumer Legislation" 42 J.B.A.K. 147, 189 (1973). The KCPA directs that it is to "be construed liberally . . . to protect consumers from suppliers who commit deceptive and unconscionable practices." K.S.A. 50-623.

Defendant argues that plaintiff's injunctive relief claim should be dismissed because plaintiff cannot prove it is probable that he will be injured by defendant in the future. Defendant does not cite case authority construing the KCPA or similar statutes. Defendant also has not established at this stage that it complied with the KCPA, and has not asserted that it has changed its business practices from those described by plaintiff.

Assuming the truth of the facts alleged by plaintiff and construing them in a light most favorable to plaintiff, the court is not firmly convinced that a defendant who has violated the KCPA may avoid injunctive relief sought by a private plaintiff on the

grounds that future violations are unlikely to damage the plaintiff. Defendant has failed to demonstrate that plaintiff cannot make an equitable case for an order restraining defendant from violating the KCPA. Therefore, without taking a position as to whether injunctive relief will ultimately be warranted, the court shall not grant summary judgment against plaintiff's claim for injunctive relief.

IV. <u>Conclusion</u>

For the above-stated reasons, defendant's motion for summary judgment (Doc. No. 90) shall be denied.

**IT IS SO ORDERED.**

Dated this 25th day of January 2022, at Topeka, Kansas.

<u>s/Sam A. Crow</u>_____
U.S. District Senior Judge