**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

TUCKER KAUFMAN,

　　　　　*Plaintiff,*

　vs.　　　　　　　　　　　　　　　　　　Case No. 21-2007-EFM

CENTRAL RV, INC.,

　　　　　*Defendant.*

**MEMORANDUM AND ORDER**

　　　Plaintiff Tucker Kaufman purchased a Cardinal Travel Trailer from Defendant Central RV, Inc., in 2018.  Plaintiff alleges Defendant failed to disclose that the trailer had previously been declared a total loss, and brings claims for fraud, misrepresentation, conversion, and violation of consumer protection laws.  In the motion now before the Court, Plaintiff seeks to limit the testimony of two disclosed experts, Nicholas Ford and Darin Leadbetter.  For reasons laid out fully below, the Court grants in part and denies in part Plaintiff's motion.

## I.　　　Factual and Procedural Background

　　　In her June 24, 2021 Scheduling Order, the Magistrate Judge directed that discovery should conclude November 1, 2021, the Pretrial Conference would occur on November 23, 2021, and that dispositive motions should be filed no later than December 8, 2021.

Ford and Leadbetter are agents or associates of Defendant, and Plaintiff deposed them both during the course of discovery. Ford was deposed as Defendant's corporate representative under Rule 30(b)(6) on August 31, 2021. Plaintiff deposed Leadbetter on July 14, 2021.

On October 1, 2021, one month before the conclusion of discovery, Defendant designated Ford and Leadbetter as non-retained expert witnesses. The initial disclosure as to Ford stated:

> Mr. Ford will testify to the total cost of the Cardinal RV, the repairs made to the Cardinal RV and industry standards with regard to RVs generally pursuant to his 20 years of experience in the RV and other motor vehicle buying, selling, and repair business. Mr. Ford will also testify to his personal knowledge of the condition of the Cardinal, and the topics, knowledge and experience he testified to during his deposition.

The initial disclosure as to Leadbetter stated:

> Mr. Leadbetter will testify to the total cost of the Cardinal RV, the repairs made to the RV and industry standards with regard to RVs generally pursuant to his 3 years in the RV buying, selling, and repair business. Mr. Leadbetter will also testify to any repairs made to the Cardinal while in Central RV's possession (see Exhibit A, Repair Checklist), the condition of the Cardinal, and his personal inspection of the Cardinal, and the topics, knowledge and experience he testified to during his deposition.

Plaintiff objected to the designations on October 7, 2021, as they did not indicate the "actual and specific opinions" that the experts would be rendering. The following day, Defendant supplemented the disclosures. As to Ford, Defendant stated:

> Mr. Ford will testify as to his experience with regard to RVs generally, including his experience with regard to buying and selling RVs, pricing RVs, inspecting RVs, and repairing RVs.

> Mr. Ford will further testify as to his experience as outlined above [sic] impact RV sales, the pricing of RVs, the nature of repairs made to RVs, and disclosures made prior to the sale of RVs.

> Mr. Ford will testify pursuant to his 20 years of experience in the RV and other motor vehicle buying, selling, and repair business. Mr. Ford will also testify to his personal knowledge of the condition of the Cardinal, and the topics, knowledge and experience he testified to during his deposition.

Defendant stated as to Leadbetter:

> Mr. Leadbetter will testify as to his experience with regard to RVs generally, including his experience with regard to buying and selling RVs, inspecting RVs, and repairing RVs.

> Mr. Leadbetter will further testify as to how his experience as outlined above [sic] impact RV sales, the pricing of RVs, the nature of repairs made to RVs, and disclosures made prior to the sale of RVs.

> Mr. Leadbetter will also testify to any repairs made to the Cardinal while in Central RV's possession (see Exhibit A, Repair Checklist), the condition of the Cardinal, his personal inspection of the Cardinal, and the topics, knowledge and experience he testified to during his deposition.

Plaintiff again objected, stating that the disclosures "simply proffer the [witnesses' experience-based] *qualifications* for whatever opinions will be given," without stating "what *opinion* will [they] be giving based on that experience."

On October 15, 2021, Defendant tried again, with additional supplemental disclosures. This time, Defendant stated:

> Mr. Ford will testify as to his experience with regard to RVs generally, including his experience with regard to buying and selling RVs, pricing RVs, inspecting RVs, and repairing RVs. Mr. Ford will further testify as to his experience as outlined above [sic] impact RV sales, the pricing of RVs, the nature of repairs made to RVs, and disclosures made prior to the sale of RVs.

> Specifically, it is anticipated that Mr. Ford will testify to the following:
> - That the price of the Cardinal was consistent with the market value for trailers of similar value;
> - How to determine what repairs/replacements are needed based on what damage an RV sustained;
> - What repairs were made to the Cardinal;
> - How the value and prices of RVs are determined generally and in Kansas;
> - The price and value of RVs in Kansas and how that compares to the price and value of the Cardinal;
> - The procedures with regard to buying RVs from auctions;

- The procedures with regard to selling RVs;
- Whether designation of a total loss determines an RV's value or has any impact on the RV's operation or functionality;
- How titles are obtained by RV dealerships;
- How often maintenance should be performed on an RV similar to the one at issue and what type of maintenance should be performed.

Mr. Ford will testify pursuant to his 20 years of experience in the RV and other motor vehicle buying, selling, and repair business. Mr. Ford will also testify to his personal knowledge of the condition of the Cardinal, and the topics, knowledge and experience he testified to during his deposition.

Defendant also described Leadbetter's testimony:

Mr. Leadbetter will testify as to his experience with regard to RVs generally, including his experience with regard to buying and selling RVs, inspecting RVs, and repairing RVs. Mr. Leadbetter will further testify as to how his experience as outlined above [sic] impact RV sales, the pricing of RVs, the nature of repairs made to RVs, and disclosures made prior to the sale of RVs.
Specifically, it is anticipated that Mr. Leadbetter will testify to the following:

- How to determine what repairs/replacements are needed based on what damage an RV sustained;
- What repairs were made to the Cardinal;
- How often maintenance should be performed on an RV similar to the one at issue and what type of maintenance should be performed.

Mr. Leadbetter will also testify to any repairs made to the Cardinal while in Central RV's possession (see Exhibit A, Repair Checklist), the condition of the Cardinal, his personal inspection of the Cardinal, and the topics, knowledge and experience he testified to during his deposition

Defendant moved for summary judgment on December 8, 2021. At the same time, Plaintiff moved to exclude or limit the testimony of Defendant's expert Tim Krehbiel as insufficiently reliable. In addition, Plaintiff moved to limit the testimony of Ford and Leadbetter for insufficiently disclosing the nature of their opinions.

Judge Crow denied Defendant's motion for summary judgment on January 25, 2022, and the following month the case was transferred to the undersigned.

-4-

## II.     Legal Standard

A party's duty to disclose the nature of its proposed expert witnesses is defined by Rule 26(a)(2)(C).[1]     Under the Rule, the party must provide not only provide a summary of "the subject matter" the witness will address, but also "a summary of the facts and opinions to which the witness is expected to testify."[2]   The disclosure must include a summary of "actual, specific opinions" of the proposed expert.[3]   The summary must give "a brief account that states the main points" of the expert's opinions.[4]   "It is not enough to state that the witness will testify consistent . . . with the testimony given during his or her deposition."[5]   At the same time, the Rule does not require "outlin[ing] the anticipated opinions in great detail.[6]

If a party fails to provide a witness disclosure required by Rule 26(a)(3), the party is not allowed to use witness at trial "unless the failure was substantially justified or is harmless."[7]   In deciding whether a party violated Rule 26(a), the Court then has broad discretion to determine if the violation is justified or harmless.[8]   In making this determination, the Court guided by these

---

[1] Fed. R. Civ. P. 26(a)(2)(C).

[2] *Id*.

[3] *Shepeard v. Labette Cty. Med. Ctr*., 2013 WL 881847, at *1 (D. Kan. 2013).

[4] *A.R. by Pacetti v. Corp. of President of Church of Jesus Christ of Latter-Day Saints*, 2013 WL 5462277, at *3 (D. Colo. 2013) (citation and quotation omitted).

[5] *Chambers v. Fike*, 2014 WL 3565481, at *7 (D. Kan. 2014) (citation omitted).

[6] *Id*. ("[T]he court must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have.") (internal quotation and citation omitted).

[7] Fed. R. Civ. P. 37(c)(1).

[8] *Woodworker's Supply, Inc. v. Principal Mt. Life Ins. Co*., 170 F.3d 985, 993 (10th Cir. 1999) (citation omitted).

four factors: (1) the prejudice or surprise to the impacted party; (2) the ability to cure the prejudice; (3) the potential for trial disruption; and (4) the erring party's bad faith or willfulness.[9]

### III.     Analysis

Plaintiff argues that Ford and Leadbetter should be barred from presenting any expert opinion testimony, and should be limited to only giving factual testimony as to the repairs that were performed on the trailer.   While the October 15, 2021 second supplemental disclosure expanded the number of subjects the two witnesses would address, Plaintiff argues it still fails to given any summary of their actual and specific opinions on those subjects.   The prior depositions of Ford and Leadbetter, he argues, cannot serve as a substitute for the disclosures required by Rule 26(a)(2)(C) because the witnesses were then identified purely as fact witnesses.

This is particularly true as to Ford, who was deposed as Defendant's Rule 30(b)(6) corporate representative.   Such a representative testifies as to "information known or reasonably available to the organization."[10]   On any given issue, the representative "does not give his personal opinion.   Rather, he presents the corporation's position on the topic."[11]   In contrast, "expert witnesses are not called upon to testify as to facts known to an organization, but are instead called upon to offer opinion based on facts provided.[12]

---

[9] *Id.*

[10] Fed. R. Civ. P. 30(b)(6).

[11] *Sprint Commc'ns Co. L.P. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 527 (D. Kan. 2006) (citation and quotation omitted).

[12] *Funk v. Pinnacle Health Facilities XXXII, LP*, 2019 WL 858718, at *4 (D. Kan. 2019) (quotation omitted).

In response, Defendant makes the bare assertion "[e]ach of the line items for both Nick Ford and Darrin Leadbetter provide an opinion on which they will testify at trial."  But this is not the case, as a review of the October 15 disclosures reveals.  The disclosures offer many bullet points about the subjects of their possible testimony, but (with one exception, discussed below) do not state what the witness's "actual and specific opinions" might be.  Thus, the disclosures state that both witnesses would testify as to "[h]ow often maintenance should be performed," without giving any indication of the actual opinion of the witness on that issue.

Defendant quickly moves to arguing even if the disclosures were insufficient under Rule 26, the Court should not bar the witnesses from testifying.  Defendant notes authority holding that while "[a] deposition cannot cure a Rule 26 disclosure defect," it "can cure *prejudice*— leading to the court's exercise of discretion under Rule 37(c) to refuse to strike the testimony."[13] Given those depositions, Defendant also argues that the testimony of Ford and Leadbetter would not disrupt the trial, and further argues that Plaintiff has failed to show any bad faith on the part of the Defendant in the failure to disclose.

The curative qualities of a deposition, however, are limited.  In the case cited by Defendant, the court noted that the expert Thompson had been  "deposed after the disclosure," and based on its review of the deposition, and the court concluded that the defendant had "sufficiently probed the methods, underlying facts and processes, and reasoning on which Thompson's opinions are based."[14]

---

[13] *Scottsdale Ins. Co. v. Deere & Co.*, 115 F. Supp. 3d 1298, 1305 (D. Kan. 2015) (citing *Contra ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1177 (10th Cir. 2011) (emphasis in *Scottsdale*).

[14] *Id.*

Here, however, Ford and Leadbetter were deposed before Defendant designated them as experts, rather than afterwards.   Moreover, unlike the present case, the disclosed report in *Scottsdasle* was not entirely devoid of specific, affirmative opinions, particularly as to the key issue of where the fire had originated.   That is, the disclosure expressed a definite opinion, but one which the court observed was "not well explained; the report merely refers to the recorded observations as its reasoning without explaining what about the observations led Thompson to conclude [where] the fire originated."[15]   In contrast, with the single exception noted below, the disclosures here gave no specifics as to any particular opinion held by Ford or Leadbetter.

There is an additional barrier to simply invoking the mere existence of depositions as a blanket cure for prejudice to Plaintiff.   "[I]t is the party who failed to disclose or supplement who has the burden of showing its failure to disclose was substantially justified or is harmless."[16] That is, the burden is on the Defendant to show how the depositions renders its failure to comply with Rule 26 to be harmless.   Defendant fails to offer any independent review of the content of the depositions to show how they addressed the subjects set out in the October 15 disclosures. Nor does it even offer a copy of the depositions so that (if the Court were so inclined) it could pour through the testimony on its own to determine which subjects were sufficiently covered.

Defendant faults the Plaintiff for failing to immediately object to the October 15 designation, and advancing its motion to strike only after discovery had closed.   But the third, still defective disclosure was made only two weeks before the end of discovery, and after Plaintiff had twice objected to earlier disclosures which were similarly deficient.   It is hard to

---

[15] *Id.* at 1304.

[16] *Est. of McDermed v. Ford Motor Co*., 2016 WL 1298096, at *4 n.20 (D. Kan. 2016).   *See also Holt v. Westley Med. Ctr*., 2006 WL 5556006 (D. Kan. 2006); *Nguyen v. IBP, Inc*., 162 F.R.D. 675, 680 (D. Kan. 1995).

fault Plaintiff for failing to offer Defendant a fourth bite at the apple.  At that point, two weeks to the discovery deadline, it wasn't unreasonable for Plaintiff to conclude that Defendant simply did not want to commit to any specific opinions for its proposed experts.[17]

To the extent Plaintiff deposed Ford and Leadbetter, he did so when they were only designated as fact witnesses, and accordingly the motivation to actively explore opinions they might offer was relatively limited.  In short, the Court finds that Defendant did not fully comply with its disclosure obligations under Rule 26.  Even assuming this failure was not in actual bad faith, the Defendant has failed to offer any substantial grounds for its continuing and persistent refusal to comply with disclosure obligations.  The Court further finds that Defendant has failed to meet is burden of showing this error was harmless.

This raises the issue of the appropriate remedy.  Exclusion is a drastic remedy.[18]  But Defendant offers no specific alternative, other than the suggestion in the last sentence of its Response that (if any violation does exist), "Defendant requests that Plaintiff provide the actual deficiencies and that this Court allow Defendant to supplement its designations to outline the opinions that were testified to in each expert's deposition."

The effect of this suggestion is that, even at this late date, Defendant would shift to Plaintiff the burden of articulating what Defendant's experts are opining about.  As noted above, this is not the standard.  Rule 26 puts the burden of disclosing an expert's actual opinions on the proponent; if this burden is not met, the proponent then has the burden of showing its error was

---

[17] *See Lee v. Max Intern., LLC*, 638 F.3d 1318, 1319 (10th Cir. 2011) ("[N]o one, we hold, should count on more than three chances to make good a discovery obligation.").

[18] *Adkins v. TFI Family Servs.*, 2017 WL 3130587, at *2 (D. Kan. 2017) (citation omitted).

harmless. Defendant has not met either burden as to all of the subjects identified in the October 15, 2021 disclosures.

Accordingly, the Court grants Plaintiff's motion to the extent that it seeks to exclude expert undisclosed opinion testimony of Ford or Leadbetter. However, it does not follow, as Plaintiff's suggest, that the witnesses can testify as lay witnesses only as to what repairs were made to the trailer.

Not all of the subjects identified in the October 15 disclosures call for opinion testimony. Substituting numbers for bullets, Defendant indicated that Ford's testimony would indicate:

1. That the price of the Cardinal was consistent with the market value for trailers of similar value.
2. How to determine what repairs/replacements are needed based on what damage an RV sustained;
3. What repairs were made to the Cardinal;
4. How the value and prices of RVs are determined generally and in Kansas;
5. The price and value of RVs in Kansas and how that compares to the price and value of the Cardinal;
6. The procedures with regard to buying RVs from auctions;
7. The procedures with regard to selling RVs;
8. Whether designation of a total loss determines an RV's value or has any impact on the RV's operation or functionality;
9. How titles are obtained by RV dealerships;
10. How often maintenance should be performed on an RV similar to the one at issue and what type of maintenance should be performed.

Of these, Plaintiff does not contest Ford's ability to address as a factual matter Subject 3, the actual repairs made to the trailer.

Subjects 1, 2, 5, 8, and 10 require opinion testimony, calling for specialized knowledge of trailers of "similar" value, the mechanical requirments and pricing effect of trailer repairs, and how often repairs "should" be performed. The failure of the disclosure to explain what Ford's

actual opinions might be as to Subjects 2, 5, 8, and 10 fails to satisfy Defendant's obligation under Rule 26, and the Defendant has failed to show this failure was harmless.

Testimony as to Subject 1, however, need not be excluded.  Although this subject clearly touches on an opinion as to the price of similar trailers, the disclosure does (in contrast to Subjects 2, 5, 8 and 10) set forth an affirmate statement of Ford's opinion: he believes that the trailer's price was "consistent" with trailers "of similar value."  This was a sufficiently direct statement of opinion that it fairly gave Plaintiff notice of Ford's proposed testimony, thereby giving him the ability to make an informed decision as to whether he should seek to depose the witness further on the issue.  Defendant did not violate Rule 26 as to Subject 1.

The remaining topics (Subjects 4, 6, 7, and 9) address the pricing and procedural operations of Defendant's business in its ordinary course.  How Defendant determines the value and prices of RVs, how it buys and sells RVs, and how it obtains titles are factual matters which reflect Defendant's actual operations.  Limited to a description of Defendant's operations, such testimony is essentially factual rather than opinion.  Further, those matters would be well within the expected testimony a Rule 30(b)(6) corporate representative.  Accordingly, the Court denies Plaintiff's motion to the extent it would preclude Ford from providing factual testimony as to Defendant's practices and procedures with respect to those topics..

At the conclusion of his Reply, Plaintiff asks for additional time to file a *Daubert* motion "to the extent the Court denies this Motion and gives Defendants [sic] a fourth opportunity to identify the 'actual opinions' of Mr. Ford and Mr. Leadbetter."  As to Subject 1, the Court is not giving Defendant an additional opportunity to disclose Ford's opinion; it is finding that the October 15 disclosure was sufficient.  As noted above, Plaintiff, if he chose, had two weeks before the end of discovery to depose Ford again, and a further five weeks after the end of

discovery to file any *Daubert* motion.  Accordingly, the request to extend the deadlines for a possible *Daubert* motion as to Ford's opinion on Subject 1 is denied.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Strike (Doc. 93) is hereby **GRANTED IN PART** and **DENIED IN PART**, as provided in the present Order.

**IT IS SO ORDERED**.

Dated this 12th day of May, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE