IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TUCKER KAUFMAN,

    *Plaintiff,*

vs.

CENTRAL RV, INC.,

    *Defendant.*

Case No. 21-2007-EFM

**MEMORANDUM AND ORDER**

Plaintiff Tucker Kaufman purchased a travel trailer recreational vehicle from Defendant Central RV, Inc., in 2018, and alleges in the present action that Defendant failed to disclose the trailer had been previously marked as a total loss due to flood damage. Currently before the court is Plaintiff's motion to exclude the proposed expert testimony of Timothy Krehbiel, P.E.

### I.    Factual and Procedural Background

Plaintiff brings claims for fraud, misrepresentation, conversion, and violation of consumer protection laws, relying in part on the testimony of his expert witness Tom Bailey. Bailey has stated that the trailer had water damage at the time of the November 2018 sale, and that the fair market value of the trailer at that time was zero. Alternatively, Bailey has also stated the fair market value of the trailer is approximately $4,000.00. In the present motion, Plaintiff argues the Court should exclude the testimony of Defendant's expert, Timothy Krehbiel, P.E.

Krehbiel was asked in his deposition if he would give the opinion that the water damage to the trailer had been "fully or adequately repaired," he responded:  "I guess that's not my intention, no."  He stressed that his report was intended to state that based on his examination "the trailer exhibited no defects that would prevent its normal use."  He further testified that "when you walk through that trailer right now, it is a perfectly normal trailer with no signs of water damage anywhere," and which otherwise "didn't even really have any normal wear and tear other than the roof, which the maintenance on it's really poor."

Following Plaintiff's motion, the Court conducted an evidentiary hearing.  The hearing established that Krehbiel is a forensic and mechanical engineer.  He has a bachelor's degree in mechanical engineering from the University of Missouri and became a licensed physical engineer in 2014.  He has previously worked for Kiewit Power Constructors, designing piping systems for power generation plants, and for Kiewit Power Engineers, writing specifications for power plant equipment, such as fans and pumps, emissions equipment, and chemical treatment facilities.

Krehbiel is currently employed as a mechanical engineer for Semke Forensics, where his primary work is accident reconstruction.  He performs additional mechanical engineering work in evaluating other losses due to storms, mechanical breakdowns, or plumbing failures.  He has examined homes, vehicles, commercial properties, semi-trucks, and travel trailers.

Krehbiel investigates water damage events about 10 to 20 times each year.  As a result, he is aware of what water damage looks like.

Typically, such damage is indicated by the spotting and discoloration, caused by water and mineral deposits that are left behind by the water after it dries. Water damage may also be indicated by the continued presence of water or moisture in the area, or by odor caused as the

water has promoted biological growth. Water damage may also reveal itself in structural damage within a wall. The water renders the wood soft, or at least softer than the rest of the wooden structure.

Krehbiel performs visual inspections and nondestructive physical examinations or disassembly. He testified that it is an engineering standard that destructive testing to determine the extent of water damage should be performed only if there is some other evidence that damage has in fact occurred.

In addition to his inspection of four or five travel trailers on behalf of Semke, Krehbiel has used travel trailers in his personal life. He is familiar with trailer components and materials. Compared to residences, trailers generally employ less wood, although they may use some wood-based composites and fiberglass materials. Typically, trailers use "decorative wallboard," which is a "composite structure with . . . vinyl on top of it, which is effectively wallpaper." This material is less absorbent that gypsum drywall or plywood, and thus less susceptible to water damage.

As a result, Krehbiel testified, travel trailers are a mix of a house and a vehicle. Trailers use wall studs made of aluminum, rather than the wood found in homes. The plumbing and mechanical features of a trailer are very similar to that of a house. At the same time, trailers also have many similarities to the semi-trucks which Krehbiel has inspected frequently, including flooring, carpeting, seating, and basic insulation.

Krehbiel has inspected commercial properties, homes, and vehicles for water damage. Vehicles do not dry well, so water damage is primarily marked by a mildewy smell. Otherwise, water damage is evidenced in a manner similar to that in a house — staining or discoloration of

materials. Because vehicles tend to use less wood, and more vinyl, plastic, and fiberglass than houses, they tend to show evidence of water damage differently.

Krehbiel was engaged to perform a general inspection of the trailer, verify that the mechanical systems worked, and check for general damage. In preparation for his examination of the trailer, Krehbiel reviewed the vehicle manual and other documents to determine the trailer's components and how it was put together. He also examined photos of the trailer from an insurance company.

When he conducted his examination, Krehbiel took numerous exterior photographs of the trailer, before turning to the interior. Because the vehicle's batteries were dead, he connected it to a generator he brought with him and examined the electrical systems. He also conducted a physical examination of the roof, which is a common failure area. In particular, the failure of roof sealant is the most common way in which water may enter a trailer. Sealant exposed to weather and ultraviolet light tends to break down and crack, and so requires frequent inspection and repair.

Krehbiel reached two conclusions in his report. First, he found no mechanical or electrical defects which would prevent its normal use. Second, he found that the roof of the trailer showed deterioration which was the result of normal age, wear and tear and improper maintenance.

Krehbiel testified that it is generally accepted among mechanical engineers that where water damage occurs under an improperly sealed roof, the damage has more likely than not been caused by leaks from the roof. And it is also generally accepted that, because holes do leak, additional testing in search of some alternative cause is not required. Additional testing is required only if the roof can be eliminated as the likely cause of the water damage.

In his inspection of the trailer, Krehbiel found no evidence of water damage. Specifically, he was not able to find any smells, dampness, discoloration, swelling, or other signs of damage. He applied pressure to the trailer's walls and floor, looking for signs of swelling or weakness, and found none. Because of these findings, Krehbiel testified that, to a reasonable degree of engineering certainty, the trailer shows no signs of water damage, and destructive testing is not justified.

## II.    Legal Standard

Federal Rule of Evidence 702 governs expert testimony. It provides that a witness "qualified as an expert by knowledge, skill, experience, training, or education" may provide opinion testimony if:

> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)  the testimony is based on sufficient facts or data;
>
> (c)  the testimony is the product of reliable principles and methods; and
>
> (d)   the expert has reliably applied the principles and methods to the facts of the case.[1]

Rule 702 imposes a "gatekeeping role" upon the district court to ensure that expert testimony is relevant and reliable.[2]  To fulfill this role, the district court must "make specific factual findings on the record which are sufficient for an appellate court to review the trial court's conclusion concerning whether the testimony was scientifically reliable and factually relevant."[3]  The party

---

[1] Fed. R. Evid. 702.

[2] *Daubert v. Merrell Dow Pharms., Inc*., 509 U.S. 579, 597 (1993).

[3] *Bitler v. A.O. Smith Corp*., 400 F.3d 1227, 1232 (10th Cir. 2005) (citing *Dodge v. Cotter Corp*., 328 F.3d 1212, 1223 (10th Cir. 2003)).

offering the expert testimony bears the burden of showing that the expert's testimony is admissible.[4]

This gatekeeping inquiry occurs in three steps. First, the Court must determine whether the expert "has a reliable basis in the knowledge and experience of his or her discipline."[5] District courts have broad discretion to determine whether a proposed expert may testify.[6] To be qualified, "[a]n expert must possess 'such skill, experience or knowledge in that particular field as to make it appear that his opinion would rest on substantial foundation and would tend to aid the trier of fact in his search for truth.' "[7] An expert who "possesses knowledge as to a general field" but "lacks specific knowledge does not necessarily assist the jury."[8]

The Tenth Circuit has explained how Rule 703 works in conjunction with the sufficient facts and data requirement of Rule 702.

> Federal Rule 703 complements Rule 702(c). It provides that "facts or data in the case that the expert has been aware of or personally observed" may be the basis for the expert's opinion and need not be admissible "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject."[9]

---

[4] *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (citing *Ralston*, 275 F.3d at 970 n.4).

[5] *Bitler*, 400 F.3d at 1232-33 (quoting *Daubert*, 509 U.S. at 592) (internal quotation marks and alterations omitted).

[6] *United States v. Nichols*, 169 F.3d 1255, 1265 (10th Cir. 1999).

[7] *Rodgers v. Beechcraft Corp.*, 759 F. App'x 646, 658 (10th Cir. 2018) (quoting *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 928 (10th Cir. 2004)).

[8] *City of Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576, 587 (10th Cir. 1998) (citation omitted).

[9] *Rodgers*, 759 F. App'x at 658 (quoting Fed. R. Evid. 703) (alterations in original).

At the second step, the Court must find the expert's proffered testimony is reliable. To be reliable, the expert's testimony must be based on sufficient facts or data.[10] At this step, the Court conducts a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."[11] The Court focuses on the expert's methodology rather than the expert's conclusions,[12] considering factors such as:

> (1) whether the opinion or theory is susceptible to testing and has been subjected to such testing; (2) whether the opinion or theory has been subjected to peer review; (3) whether there is a known or potential rate of error associated with the methodology used and whether there are standards controlling the technique's operation; and (4) whether the theory has been generally accepted in the scientific community.[13]

These factors are not exclusive.[14] "Regardless of the specific factors at issue, the purpose of the *Daubert* inquiry is always 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.' "[15]

Finally, the Court must examine "whether [the] proposed testimony is sufficiently relevant to the task at hand."[16] "Relevant evidence 'means evidence having any tendency to

---

[10] *BNSF Ry. Co. v. Bd. of Cty. Comm'rs*, 2005 WL 1944770, at *2 (D. Kan. 2005) (citing Fed. R. Evid. 702).

[11] *Rodgers*, 759 F. App'x at 659 (quoting *Daubert*, 509 U.S. at 592-93).

[12] *Id*. (citing *Daubert*, 509 U.S. at 595).

[13] *Hoffman v. Ford Motor Co*., 493 F. App'x 962, 974 (10th Cir. 2012) (citing *Daubert*, 509 U.S. at 593-94).

[14] *Id*. (citing *Daubert*, 59 U.S. at 594).

[15] *Dodge*, 328 F.3d at 1222-23 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

[16] *Bitler*, 400 F.3d at 1234 (internal quotation marks and citation omitted).

make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' "[17]  Even if the expert's evidence is scientifically valid and follows reliable methodologies, it might not be relevant to the issue at hand.

As noted earlier, the party offering the expert testimony bears the burden of showing that the expert's testimony is admissible.[18]  Ultimately, "rejection of expert testimony is the exception rather than the rule."[19]  Although the Court serves as the gatekeeper for expert testimony, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" remain "the traditional and appropriate means of attacking shaky but admissible evidence."[20]

### III.   Analysis

Plaintiff challenges three opinions presented by Krehbiel: (1) the trailer does not currently show any water damage, (2) if there is any water damage, this is probably due to Plaintiff's failure to conduct proper maintenance on the roof, causing cracked sealant and delamination, and (3) the infrared imaging conduced by Bailey would not reliably indicate hidden water damage within the walls of the trailer.

As to the existence of water damage in the trailer, Plaintiff argues that Krehbiel is not qualified to deliver an opinion, and is not testifying based on a reasonable foundation or using a reasonable methodology.  He also contends that Krehbiel's opinion is not supported by proper

---

[17] *Id* (quoting Fed. R. Evid. 401).

[18] *Nacchio*, 555 at 1241 (10th Cir. 2009) (citing *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 n.4 (10th Cir. 2001)).

[19] Fed. R. Evid. 702, advisory committee's notes to 2000 amendments.

[20] *Daubert*, 509 U.S. at 596 (citation omitted).

principles and methods. The Court finds that Defendant has presented a valid foundation for Krehbiel's testimony, and that Plaintiff's arguments do not support exclusion.

In particular, Plaintiff argues that Krehbiel lacks specific experience and training in recreational vehicles. However, it is doubtful that water damage to recreational vehicles is a field that would support exclusive experience or specialization. More importantly, Plaintiff has failed to show how Krehbiel's extensive experience as a mechanical engineer in assessing water damage to houses and commercial properties is irrelevant simply because wheels have been added.

Krehbiel has extensive training and experience in identifying water damage, and coherently explained how such damage might be detected. Krehbiel explained that he has some experience with vehicle inspections and, more importantly, reasonably explained in light of mechanical engineering principles, how water damage in vehicles is like, and in some ways unlike, water damage in traditional structures. Krehbiel presented testimony reasonably based on training and experience which is unlikely to be commonly available to an ordinary juror.

Plaintiff also faults Krehbiel for failing to pull apart the trailer's walls to determine the actual extent of any water damage. In this respect, Plaintiff also attacks Krehbiel for inconsistency— having performed no destructive testing himself, he criticizes Plaintiff's expert Bailey for performing no such testing. But as noted at the hearing, Krehbiel testified that generally accepted principles of mechanical engineering recommend that destructive testing occur *if* there is other objective indicia of water damage. Thus, it is not substantially inconsistent for Krehbiel (who states he found no such independent signs of water damage) to refrain from destructive testing, while criticizing Bailey (who states he found such signs), for skipping such tests.

Plaintiff argues that Krehbiel's opinion that any water damage (if it does exist) is likely due to cracks in the roof sealant is unreliable. In support of this argument, Plaintiff stresses that Krehbiel did no testing to correlate particular areas of water damage with particular holes in the trailer roof. He also notes that Krehbiel failed to determine whether roof leaks would have caused damage to the "slide out" portions of the trailer.

However, Krehbiel testified he could not remember the state of the slide outs, and testified he is not offering an opinion on how those areas may have received water damage. More importantly of course, Krehbiel never agreed that there was water damage in the slide outs, or indeed any other portion of the trailer. He testified explicitly that he observed no evidence of water damage. His testimony is simply to the effect that—to the extent there *might* be some water damage in the trailer—it is probably due to cracks in the roof sealant.

Plaintiff notes that Krehbiel responded negatively when he as asked if he had tried to "match" up areas with cracked roof seals with "areas that Mr. Bailey identified what he is saying is water damage." But, again, Krehbiel doesn't accept Bailey's identifications of water damage; he believes there was none. Further, he explained why he did not attempt such correlation, testifying that the delamination was common across the entire roof. As he testified earlier in his deposition, "there was cracking and delamination pretty much throughout the roof, so basically no matter where you point to [Bailey's] asserted claims of water damage, there's going to be a spot above it that's cracked and delaminated because it was consistent across the entire top of the trailer."

To the extent Plaintiff has raised questions about the methodology of Krehbiel, or the conclusions he has drawn, the Court finds these questions are properly addressed by cross-examination rather than by exclusion. Given his training as an engineer and his experience in

identifying water damage in vehicles and homes, Krehbiel has explained his thinking and how he arrived at his conclusions, and is qualified to testify as an expert under Rule 702 as to the opinions presented in his report.

Finally, Plaintiff also challenges Krehbiel's criticisms of the infrared thermal imaging conducted by his expert Bailey as not reliable. In both his deposition and at the hearing, Krehbiel testified that because the materials in the trailer have had a long time to dry, they are unlikely to show any structural deformation from any exposure to water.

As noted at the conclusion of the hearing, Krehbiel's disclosed expert report offers only two opinions—that trailer shows no sign of water damage and is fit for ordinary use, and any hypothetical water damage is probably caused by cracked roof sealant. Plaintiff does not intend to introduce opinion testimony from Krehbiel about the usefulness or validity of infrared testing of the trailer. Accordingly, Krehbiel's opinion on infrared analysis becomes an issue only to the extent that Plaintiff affirmatively inquires into it. If such inquiry is made, Krehbiel is entitled to explain his views, and Plaintiff is free to cross-examine him about them.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Exclude or Limit (Doc. 89) is **DENIED**.

**IT IS SO ORDERED**.

Dated this 11th day of July, 2022.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE