IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

TUCKER KAUFMAN,

    *Plaintiff,*

vs.

    Case No. 21-2007-EFM

CENTRAL RV, INC.,

    *Defendant.*

**MEMORANDUM AND ORDER**

After a trial of Plaintiff Todd Kaufman's various claims arising from his purchase of a travel trailer from Defendant Central RV, the jury returned a verdict in favor of Defendant. The matter is now before the Court on Plaintiff's Motion seeking a new trial under Federal Rule of Civil Procedure 59. (Doc. 180). For the reasons provided herein, the Court finds no error and denies the Motion.

**I.    Factual and Procedural Background**

Plaintiff alleges that in 2018 he purchased a Cardinal travel trailer from Defendant in Ottawa, Kansas, and that Defendant failed to reveal that the trailer had previously suffered from extensive storm damage. Plaintiff raised various claims during the course of this litigation, but the claims submitted to the jury were for fraud, fraud by silence, and violating the Kansas Consumer Protection Act (KCPA). Plaintiff alternatively alleged Defendant violated the KCPA

by willfully concealing the storm damage, using exaggerations or falsehoods with respect to the damage, and falsely representing the trailer was in good condition.

In support of his claims, Plaintiff presented both his own testimony and that of his former fiancé as to what they were told about the trailer prior to its purchase. Plaintiff also presented the testimony of other Central RV customers, who expressed various complaints about the seller. The jury also heard from Raymond Case (the Arkansas Farm Bureau insurance adjuster who had deemed the trailer a total loss), and Joel Baker (who represented the auction house which assisted in the sale of the trailer from the Arkansas Farm Bureau to Defendant). In addition, the jury heard from three persons who work at Central RV—Nick Ford (the owner), Ned Ford (Nick's brother and the person who gives customers walk-throughs of vehicles), and Darin Leadbetter (a repair technician). Finally, both parties presented an expert witness, each of whom addressed the condition of the trailer.

The witnesses provided contradictory testimony as to the present condition of the trailer, and what Plaintiff may or may not have been told as to its history. Plaintiff and his former fiancé testified that they were not informed of the prior storm damage, and were told only that the trailer had at some point suffered a broken window, which had been repaired. The witnesses from Central RV testified that all apparent damage on the trailer had been repaired, that the Defendant otherwise did not know of storm damage to the trailer, and that the immediate prior owner of the trailer—Arkansas Farm Bureau—was reflected on the original title given to Plaintiff, who is himself an insurance adjuster.

As previously noted, the jury ultimately returned a verdict in favor of Defendant on all the claims of fault advanced by Plaintiff.

## II.  Legal Standard

Federal Rule of Civil Procedure 59(a) allows the court to grant a new trial on motion "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal courts." Whether to grant a motion for new trial under Rule 59(a) is up to the sound discretion of the trial court.[1]  Such a motion is "not regarded with favor and should only be granted with great caution."[2]  In reviewing a motion for new trial, the court must view the evidence in the light most favorable to the prevailing party.[3]  The party seeking to set aside a jury verdict must demonstrate trial errors constituting prejudicial error or demonstrate that the verdict is not based on substantial evidence.[4]  In making that determination, the Court's "inquiry focuses on whether the verdict is clearly, decidedly or overwhelmingly against the weight of the evidence."[5]  The Court will "ignore errors that do not affect the essential fairness of the trial."[6]

## III.  Analysis

### A.  The Court properly limited the claim of concealment of the "extent" of the storm damage.

At the conclusion of Plaintiff's evidence, the Court granted Defendant's motion for a directed verdict as to whether it had willfully concealed "the extent of the prior storm damage to

---

[1] *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984); *Hinds v. Gen'l Motors Corp.*, 988 F.2d 1039, 1046 (10th Cir. 1993).

[2] *Paradigm Alliance, Inc. v. Celeritas Techs., LLC*, 722 F. Supp. 2d 1250, 1258 (D. Kan. 2010) (internal quotations and citations omitted).

[3] *Griffin v. Strong*, 983 F.2d 1544, 1546 (10th Cir. 1993); *Escue v. N. Okla. Coll.*, 450 F.3d 1146, 1156 (10th Cir. 2006).

[4] *White v. Conoco, Inc.*, 710 F.2d 1442, 1443 (10th Cir. 1983).

[5] *Black v. Hieb's Enters., Inc.*, 805 F.2d 360, 363 (10th Cir. 1986).

[6] *McDonough*, 464 U.S. at 553.

the Cardinal." Plaintiff argues the jury should have been instructed that it could return a verdict in his favor if Defendant concealed either the existence *or* the extent of the prior storm damage.

The motion was properly granted because there was no evidence that Central RV was informed by Insurance Auto Auction ("IAA"), the auction house which sold the trailer to Defendant, of the full extent of the storm damage. Rather, the evidence established only that Central RV was informed that the trailer had previously owned by an insurance company and had suffered storm damage. Joel Baker of IAA testified that any documentation his company received from the insurer would have never been provided to Central RV.

Defendant provided the Plaintiff with the original title to the trailer, which showed the owner as the Arkansas Farm Bureau. The evidence at trial established that Defendant otherwise informed Plaintiff the trailer had suffered a broken window, thereby disclosing the storm damage information available to Defendant at the time. Plaintiff presented no evidence that Defendant had greater knowledge of particular storm damage other than the window.

Moreover, the jury was instructed it could return a verdict for Plaintiff if Defendant concealed the fact that the trailer had suffered damage from a storm. As the Court observed at the hearing on Defendant's motion, the additional instruction language urged by Plaintiff (that Defendant could be liable for concealing "the extent of the storm damage") would have meaning only if it were interpreted as meaning the *full extent* of the storm damage. Saying Central RV could be liable if it failed to disclose some prior storm damage would be superfluous to the primary instruction that Central RV was liable if it knew, but failed to reveal, the fact or existence of storm damage. There was never any evidence that Central RV knew the full extent of the storm damage. The court adequately instructed the jury on Plaintiff's claim in light of the evidence in the case.

**B.     The Court properly excluded testimony describing a video of the trailer taken by an owner prior to its acquisition by Defendant, where neither party had access to the video or had seen it, and the video was not available at trial.**

The Court excluded reference to a video which reportedly showed rainwater entering the trailer. Plaintiff argued at the in limine hearing and in the present motion that he should have been allowed to introduce testimony from an Arkansas Farm Bureau appraiser describing what he saw on the video. The Court determined that without the video itself the descriptive testimony was unreliable and lacked foundation.

The video was reportedly taken by a prior owner of the trailer, but it is unclear when the video was taken. The video itself was not offered in evidence, and neither Plaintiff or Defendant has ever seen the video or had access to it. It is unclear whether the Arkansas Farm Bureau ever actually possessed a copy of the video. Although Plaintiff complains that the Defendant failed to subpoena the former owner in an attempt to obtain a copy of the video, it does not appear that Plaintiff made such an effort either.

Under Rule 1002, "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise."[7] Under Rule 1004, an original recording is not required if:

(a)     all the originals are lost or destroyed, and not by the proponent acting in bad faith;

(b)     an original cannot be obtained by any available judicial process;

---

[7] Fed. R. Evid. 1002.

    (c)      the party against whom the original would be offered had control of the original; was at that time put on notice, by pleadings or otherwise, that the original would be a subject of proof at the trial or hearing; and fails to produce it at the trial or hearing; or

    (d)      the writing, recording, or photograph is not closely related to a controlling issue. An original is not required if the original recording is unavailable.

Rules 1002 and 1004 apply to proffers of narrative descriptions of the contents of a video.[8] The proponent of the evidence has the burden to show that the requirements of the rules are met.[9]

The Court properly excluded the testimony. The insurance adjuster did not take the video, nor was he present when it was taken. Accordingly, he cannot reliably testify that what he saw was a fair and accurate representation of the condition of the trailer at any particular time. At the in limine hearing, the Court was informed by the parties that the video was not in the possession of either party and was not produced by Arkansas Farm Bureau.

Plaintiff has not shown any attempt to obtain a copy of video from the former owner. Indeed, he acknowledges that "the prior owner has not been served with a subpoena to produce this video," but blames this on the "Defendant [who] had ample opportunity to issue such a subpoena."[10] However, as noted above, Plaintiff as the proponent of the descriptive testimony has the burden to show that the video either no longer exists, or cannot be obtained through judicial means. The Court properly excluded testimony regarding the video.

---

[8] *See Buruca v. Dist. of Columbia*, 902 F. Supp. 2d 75, 83 (D.D.C. 2012) ("Because the plaintiff does not allege that the video footage is unavailable, the plaintiff may prove the videos' content only by submitting the actual recordings.").

[9] *See Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 65 (3d Cir.1984).

[10] Doc. 150, at 8.

**C.     No error exists in excluding exact estimates of the cost to repair the trailer.**

Plaintiff argues that the Court erred in not allowing him to introduce evidence as to the estimated repair price for the trailer. Plaintiff at various times has proposed three vehicles for this evidence: (1) the expert testimony of his expert, Tom Bailey, (2) the testimony of Raymond "Andy" Case, and (3) as an independent business record of the Arkansas Farm Bureau.

As noted earlier, Case is a staff appraiser with Arkansas Farm Bureau. In 2018, he inspected the trailer and appraised its value. In order to determine the cost to repair the trailer, Case contacted the prior owner, who referred him to Clay's RV. Clay's RV did not inspect the trailer, but gave Case the cost for the replacement of each item identified by Case, regardless of the degree of damage actually suffered. In his deposition, Case testified that he had never performed any of the repairs of the sort that Clay RV described, and did not know what the exact cost to repair the Cardinal would be. He simply used Clay's numbers.

Case was not identified as an expert. A scheduling order "may be modified only for good cause and with the judge's consent."[11] "In practice, this standard requires the movant to show the scheduling deadlines cannot be met despite the movant's diligent efforts."[12] The good cause requirement "obligates the moving party to provide an adequate explanation for any delay."[13]

Here, Plaintiff not only failed to designate Case as an expert, he made no attempt to obtain relief from the scheduling order by showing good cause for the failure. To the contrary, in responding to Defendant's motion in limine, Plaintiff did not seek relief from the scheduling

---

[11] Fed. R. Civ. P. 16(b)(4).

[12] *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014) (quotations and alterations omitted).

[13] *Husky Ventures, Inc. v. B55 Invs., Ltd*., 911 F.3d 1000, 1020 (10th Cir. 2018) (quotations omitted).

order and allow Case to testify as an expert. Plaintiff's response stressed that Case "is not being proffered as an 'expert,' "[14] but solely as a lay witness who would repeat the Arkansas Farm Bureau's repair estimate. But allowing Case to provide such testimony would have unfairly given a false imprimatur to that estimate, as if he were endorsing that estimate as fair and accurate — the province of an expert. The Court thus appropriately ruled that Case could testify solely as to what he observed and documented during his inspection. Case had no first-hand knowledge of the cost to repair the trailer, and could not provide opinion testimony as to what that cost would be.

There is no dispute that Plaintiff designated Mr. Bailey as his retained expert in this matter. The Court let Bailey testify that the insurance company's estimate of the cost to repair the trailer exceeded its value, without discussing the precise value of the necessary repairs. This followed the Court's sidebar review of Bailey's report, which merely indicated that Bailey had reviewed the insurance company's estimate, and which he then used in his own conclusions. The report did not state that Bailey ever confirmed or approved those estimates as reasonable.

Finally, Plaintiff has failed to show error declining to admit the Clay's RV estimate as a business record of Arkansas Farm Bureau.

Plaintiff made the same argument in his response to Defendant's motion in limine, contending that any hearsay problem with the Arkansas Farm Bureau estimate is cured by the business records exception. Rule 803(6) excludes from the definition of hearsay evidence showing:

A record of an act, event, condition, opinion, or diagnosis if:

---

[14] Doc. 10, at 4.

    (A)    the record was made at or near the time by--or from information transmitted by—someone with knowledge;

    (B)    the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;

    (C)    making the record was a regular practice of that activity;

    (D)    all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and

    (E)    the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Information provided by a third party to the business preparing the record must itself fall within a hearsay exception.[15] Information received by a business from third parties is allowable under Rule 803(6) if there is adequate verification or other assurance of accuracy of the information provided by the outside person.[16] The decision to admit evidence under Rule 803(6) is committed to the Court's discretion.[17]

In his response to the motion in limine, Plaintiff relied in particular on *United States v. Duncan*,[18] as supporting admission. In *Duncan*, the defendants had participated in a series of fake vehicle accidents in order to defraud insurance companies.[19] On appeal from their convictions for mail fraud and conspiracy, the Fifth Circuit rejected their argument that the medical records received by the insurance companies were not business records under Rule

---

[15] *United States v. Gwathney*, 465 F.3d 1133, 1141 (10th Cir. 2006).

[16] *United States v. McIntyre*, 997 F.2d 687, 700 (10th Cir. 1993).

[17] *See Digital Ally, Inc. v. Utility Assocs.*, 882 F.3d 974, 977 n. 5 (10th Cir. 2018) (citing *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1207 (10th Cir. 2010).

[18] 919 F.2d 981, 986 (5th Cir. 1990).

[19] *Id*. at 984-85.

803(6),.[20] The court explained that "[t]he insurance companies compiled their records from the business records of hospitals. Because the medical records from which the insurance company records were made were themselves business records, there was no accumulation of inadmissible hearsay."[21]

But the present case is quite different. The medical records in *Duncan* arose from the hospitals' actual treatment of the criminal defendants. Here, Clay's RV did not repair or even inspect the Cardinal trailer, it simply responded to information it heard from Case. Plaintiff has not shown who at Clay's RV made the estimate, what their qualifications might be, or whether that business typically gives estimates based on second-hand information. Clay's RV was specifically consulted for the purpose of giving an opinion as to the cost to repair the trailer. Yet Plaintiff has never offered any proper opinion testimony from any qualified person—whether Case, Bailey, or an identifiable employee of Clay's RV—that the estimate was fair and accurate. The Court properly found that this chain of hearsay is not reliable, and was not admissible under Rule 803(6).

**D.    The Court correctly excluded an interim administrative finding.**

Plaintiff argues that the Court should have admitted, while he was testifying on redirect, a copy of a 2019 letter sent by Kansas Assistant Attorney General Melanie Jack. Jack performed an investigation, which appears to have been limited in nature, into a consumer complaint made to her office by Plaintiff against Defendant.

Plaintiff did not attempt to introduce her letter during Jack's own testimony, which had been given the day before. When the subject of the letter was touched upon during her

---

[20] *Id*. at 987.

[21] *Id*. at 986.

testimony, Defendant objected that the Court had granted its motion in limine to exclude the 2019 letter as to its determination that Central RV had violated the KCPA went to an ultimate issue in the case.

Plaintiff stressed that he was not seeking to introduce Jack's substantive findings, stating, "So far the question's that's been presented is just that she recognized that she sent this letter. I haven't gotten into what conclusions she drew and I don't actually intend to get into the conclusions." Plaintiff's counsel stated he was not then offering the letter for admission, but "to say that she is the one that wrote the exhibit. I anticipate that we'll probably move to admit it. I expect there will be an objection. I expect that objection will probably be sustained." Instead, Plaintiff agreed he would use the letter only to refresh Jack's recollection that she had asked Defendant to refund the purchase price of the trailer.

The following day, counsel attempted to introduce the substance of Jack's letter during redirect examination of Plaintiff, arguing that Defendant "opened the door to this" by noting during Nick Ford's testimony that the Attorney General had concluded that Central RV had not violated the KCPA. The Court refused to allow the letter in evidence.

There was no open door, and the Court's decision was correct. The Attorney General ultimately informed Defendant in 2020 that he found no KCPA violation. Jack's letter from 2019 represents an interim finding, one superseded by the final dismissal of Plaintiff's administrative charge. The door would have been opened only if Defendant had asked something along the lines of: "And at no point did any one at the Attorney General's office ever indicate that a violation existed?"

More importantly, even if the door had been opened, the Court's decision to exclude the letter remains correct. First, Jack's letter asserts that the Cardinal was sold under a "salvage

-11-

title." A "salvage title" is a brand on a vehicle title, as may be required under the motor vehicle laws of individual states. Here, the Cardinal had been previously designated a "total loss," but Arkansas law did not require a salvage marking, and the original Arkansas title was given to the Plaintiff. In her testimony, Jack acknowledged that "Arkansas doesn't brand salvage."

Plaintiff argues that the terms "salvage title" and "total loss" are functional equivalents, citing the usage of websites such as NerdWallet, Experian, and the Texas Department of Motor Vehicles. Plaintiff did not offer such evidence during the trial.

The Court properly excluded the substance of the Jack letter for multiple reasons. First, the Court noted that Jack was conflating salvage title—an issue in other cases involving Central RV—with a total loss. Second, Jack's finding that Central RV violated the KCPA addressed an ultimate issue in the case, even as her investigation was extremely limited. Finally, that finding was not final, as the Attorney General ultimately concluded the Act was not violated. The Attorney General's office closed the file on the claim by Kaufman against Central RV, and the office commenced no civil action involving the matter.

**E.     Plaintiff's literal eve of trial request for a willful concealment instruction was properly denied.**

Plaintiff alleges the Court erred in refusing his request for an instruction that Defendant had willfully concealed the total loss history.

The Court conducted a pre-trial conference on Thursday, October 6, 2022. In addition to resolving the parties' in limine motions, the Court reviewed the parties' instructions and ruled on various objections. The Court gave the parties until the next day, Friday, to submit any changes to the jury instructions that the parties had discussed and agreed on at the instruction conference. The Court reminded the parties that the following Monday was a federal holiday, that the

undersigned would be travelling on Monday evening from his assigned chambers in Wichita to conduct the trial in Kansas City, Kansas, and that the Court intended to instruct the jury immediately after voir dire.

The following day, the Court emailed to counsel "a copy of the Instructions which contains modifications made in the light of yesterday's hearing." The email proceeded to explain the Court's ruling on the one issue reserved from Thursday's hearing (the proper damages for negligent misrepresentation) before reiterating that any modifications "must be received by end of business today, as Monday is a federal holiday and we will be preparing the instruction for the jury first thing Tuesday morning."

No party requested any change in the instructions. On Monday, the Court notified its administrative staff in Kansas City to prepare the attached instructions.

The willful concealment instruction was sent to the Court (along with other modifications reflecting the abandonment of certain other claims), via email at 6:46 p.m. on Monday, October 10, 2022. Counsel offered no rationale or explanation for the untimely request.

"The district courts must manage a burgeoning caseload, and they are under pressure to do so as efficiently and speedily as they can, while still accomplishing just outcomes in every civil action. Part of that job means that they are entitled—indeed they must—enforce deadlines."[22] Given the circumstances of the case, the Court correctly declined to issue the requested instruction. "Deadlines are endemic in litigation and mean something."[23]

---

[22] *Reales v. Consol. Rail Corp.*, 84 F.3d 993, 997 (7th Cir. 1996).

[23] *Reyndard v. Washburn Univ. of Topeka*, 2022 WL 5167610, at *8 (D. Kan. 2022).

**F.      The Court correctly refused to take judicial notice of matters which would have the subject to reasonable dispute.**

During the trial, Plaintiff asked that the Court take judicial notice of both the date and result of the lawsuit brought by a prior Central RV customer, Todd Morgan, against the Defendant.[24] Counsel acknowledged the prior adverse ruling by the Court at the in limine conference, but asked at trial for the Court to take "judicial notice that the result of the Todd Morgan trial was a plaintiff's verdict on all counts." Counsel also requested admission of sales records for Central RV between the date of the *Morgan* trial and his purchase of the Cardinal trailer. In the present motion, Plaintiff argues the Court committed error failing to take judicial notice and admitting the sales records.

No error exists. Central RV's 2018 sales records were proffered as potentially relevant to Plaintiff's claim for punitive damages, and as potential impeachment for the testimony of Nick Ford. The court appropriately concluded that the voluminous sales records were not appropriate impeachment, being offered well after Ford had concluded his testimony and would not provide any substantial contradiction to Ford's testimony on any important issue. In addition, the records reflected gross rather than net sales, and in any event would be relevant to the issue of punitive damages only if the jury had found some willful misconduct by Defendant. It did not.

Under Federal Rule of Evidence 201(b)(2), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from

---

[24] *Morgan v. Central RV.*, No. 17-2300-JPO (D. Kan.).

sources whose accuracy cannot reasonably be questioned." Whether a given fact is subject to judicial notice is subject to the discretion of the Court.[25]

The jury heard the testimony of Todd Morgan, along with other dissatisfied customers of Central RV.[26] Each witness was involved in the negotiations for the purchase of a vehicle or trailer at Central RV in 2016 or 2017. These claims involved different vehicles, with negotiations occurring at different times, from Plaintiff's 2018 purchase of the Cardinal trailer, but the Court allowed this evidence to allow Plaintiff to attempt to prove his theory of a pattern of misconduct by Defendant. In some of these instances, the actual sale was never finalized. Either the sale was not completed, or the vehicle was returned for a refund. Only Morgan actually purchased a vehicle, and subsequently brought a civil action against Central RV which reached trial.

The Court also correctly declined to take judicial notice of the result of the *Morgan* trial. Although Plaintiff suggests that Todd Morgan received "a plaintiff's verdict on all counts," this requires substantial qualification. Unlike the present case, *Morgan* involved a claim that Central RV concealed the history of a vehicle marked as salvage. The jury did return a preliminary verdict in favor of Morgan, awarding $1,351 in damages, but the case was settled before the jury could address Morgan's punitive damages claim. The case was then dismissed without the entry of final judgment.

The actual result in Morgan's claim is thus ambiguous, and the meaning of the interim verdict is subject to reasonable dispute. Taking judicial notice of that interim verdict would have

---

[25] *See Lozano v. Ashcroft*, 258 F.3d 1160, 1164 (10th Cir. 2001).

[26] Steve Wilson testified in person. Todd Morgan, Ellen Hermance, Lisa Baxter, and Kirk Baxter testified by deposition.

naturally compelled Defendant to provide evidence explaining its defense of the *Morgan* action, plunging the Court into a retrial of the claims in that action. The jury in the *Morgan* action heard different witnesses, testifying about a different vehicle, sold at a different time. Its interim verdict, which was not commemorated in any final judgment, is not probative of any issue in this case. Given that Plaintiff was able to present the deposition testimony of Morgan himself in this case, the Court properly declined to take judicial notice of the ambiguous results of that lawsuit.

**G.     Baker's speculation of how he would respond to a complaint was properly excluded.**

As noted earlier, Joel Baker of IAA testified in the action by deposition. During that deposition, counsel for Plaintiff asked the following hypothetical question:

> Q.     If Central RV were to make a complaint to Insurance Auto Auctions and say you never told us that the Cardinal was a total loss, what would your reaction be to that complaint?
>
> A.     Well, we advertised a storm-damaged unit. I mean, it's an insurance claim unit, so that would typically mean it's a total loss vehicle.

Prior to trial, the Court sustained Defendant's objection to the passage as speculative, given that Central RV made no such complaint, and what an "insurance claim unit" might be. Plaintiff argues in the present motion that the Court erred in excluding the passage.

The Court finds no error. Plaintiff argues that the testimony is not speculation because, he emphasizes, "this goes to what *Joel Baker* would do" in reaction to such a complaint, and that "Mr. Baker is inferring from his experiences how he would respond."[27] But Baker's knowledge or state of mind, evidenced his hypothetical reaction to a hypothetical complaint, is not in issue. It is the Defendant's state of mind which is important, and it is uncontroverted that Defendant never made any such complaint.

---

[27] Doc. 180, at 14 (emphasis in original).

Plaintiff could, and did, present extensive testimony from Baker as to the nature of IAA's business, its advertisements in general, and its specific communications with Central RV. The Court's decision to exclude one passage of manifestly speculative testimony of a hypothetical reaction to a complaint that was never made was not erroneous.

**H. The verdict was not clearly against the weight of the evidence.**

Plaintiff argues that the jury verdict was against the weight of the evidence. As noted earlier, a request for a new trial based on the claim that the verdict is contrary to the evidence faces a heavy burden. That is, "the verdict must stand unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence."[28]

Plaintiff, however, advances this argument as a mere conclsuion, made without any examination of the actual evidence in the case. Nor need the Court undertake one, having observed in another case that "[a] detailed re-weighing of the arguments and evidence from trial is unnecessary as the Court is not convinced that the jury's verdict was decidedly and overwhelmingly against the weight of the evidence."[29] It is sufficient to observe that the evidence introduced at trial was in sharp conflict as to what Defendant knew as to the condition of the trailer, the actual representations it did nor did not make to Plaintiff, and the actual fitness or condition of the repaired trailer sold to Plaintiff. Because there was sufficient evidence to support the vedict, the jury's finding for Defendant, its vedict is not clearly erroneous.[30]

---

[28] *M.D. Mark, Inc. v. Kerr–McGee Corp.*, 565 F.3d 753, 762 (10th Cir.2009) (internal quotation and citation omitted).

[29] *Ryan Dev. Co., L.C. v. Indiana Lumbermens Mut. Ins. Co*., 2011 WL 5080309, at *6 (D. Kan. 2011), *aff'd*, 711 F.3d 1165 (10th Cir. 2013).

[30] *EEOC v. Gaddis*, 733 F.2d 1373, 1379 (10th Cir. 1984).

**I.      There was no Cumulative Error**

Finally, pointing to his various allegations of error discussed above, Plaintiff argues that a new trial should be granted in light of the cumulative error in the case. Cumulative error exists when "[t]he cumulative effect of two or more individually harmless errors has the potential to prejudice a defendant to the same extent as a single reversible error."[31] The doctrine of cumulative error rests on the premise that two or more individual harmless errors may prejudice a litigant to the same extent as a single reversible error.[32]

Having found no actual error, the Court find that the doctrine is inapplicable here.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for New Trial (Doc. 180) is hereby **DENIED.**

**IT IS SO ORDERED**.

Dated this 25th day of January, 2023.

*[signature]*

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE

---

[31] *Greig v. Botros*, 525 F. App'x 781, 795 (10th Cir.2013) (internal quotation marks omitted) (quoting *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir.1990)).

[32] *See United States v. Ward*, 863 F.3d 1299, 1312 (10th Cir. 2017).